**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NOVI FOOTWEAR INTERNATIONAL CO. LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC and WILLIAM SWEEDLER,<br><br>Defendants. | Civil Action No.: 1:22-cv-10952-DLC |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

Plaintiff Novi Footwear International Co. Limited ("Novi") submits this memorandum of law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction against Defendants Earth OpCo LLC ("Earth"), Defendant Windsong Capital Management LLC and William Sweedler ("Sweedler"), and all those under their respective control, from transferring, selling or otherwise disposing of certain footwear products.

**PRELIMINARY STATEMENT**

By this application, Novi seeks an injunction against Defendants and their respective parents, subsidiaries and affiliates, prohibiting them from disposing of certain footwear products sold to them by Novi (the "Goods"). The Goods are at present being held in storage facilities located in the United States and Asia or are on their way to the storage facilities by ocean transport. The Goods were specially made for Earth and bear the Earth trade name and trademarks. They are produced in line with current fashion trends and thus lose their value over time as consumers' preferences shift to the new season.

Novi and Earth have a business relationship dating back to 2020, but in mid-2021, Earth's business was purchased by a private equity firm, Windsong Global ("Windsong"), which is owned and/or controlled by Sweedler as its Chief Executive Officer and Chairman. Soon after the transaction, Sweedler became Earth's Chief Executive Officer and Chairman and Earth almost immediately began to default in its payment obligations. Earth's default led to Novi ceasing or considering ceasing its shipment of Goods to Earth, which prompted Earth to enter into two written agreements with Novi, most recently as February 13, 2022, in which they acknowledged the existing debt to Novi, required Earth to pay down the debt in installments pursuant to a specific schedule and agreed that Novi may repossess and sell the Goods to mitigate its damages if Earth failed to comply with the installment payment plan. Within weeks after signing the February 13,

2022 agreement, Earth informed Novi that it could not even make the payments under the installment plan and therefore Novi exercised its rights under its agreements with Earth and demanded that Earth return the Goods to Novi so that Novi may sell them and recover its losses.

Inexplicably, Earth refused to return the Goods, taking the position that Novi has no right to repossession despite Earth's prior written agreement that Novi may sell the Goods, even the Goods bearing the Earth name and trademarks, to satisfy the debt, depriving Novi of the very collateral that the parties agreed to use to secure Earth's payment obligations. The debt is currently in excess of $21 million. To compound the problem, Novi has come to learn that Earth is being rendered insolvent and lacks the resources to satisfy its obligations to Novi. And intentionally so. Sweedler, Earth's new CEO/Chairman, and the head of Windsong Global is diverting Earth's assets to other Windsong-related entities. For example, Earth entered into a management services agreement with Defendant Windsong Capital Management LLC, another Sweedler controlled entity, and has continued to make payments to this entity for so-called management services using funds and resources that rightfully should have been used to pay Novi for the Goods.

The circumstances of this case scream for injunctive relief. If Defendants are successful in selling the Goods without paying Novi and diverting the funds they receive, there will be nothing left over for Novi to satisfy a money judgment. The injunctive relief sought in this motion is narrowly tailored and directed entirely to preserve the status quo and collateral to make sure that there is something left over at the end of the case after a money judgment. Defendants have no defense to non-payment, they have accepted the Goods and intend to sell them. It would be manifestly unjust to allow Defendants to sell the only assets available to satisfy a money judgment in Novi's favor under these circumstances. Injunctive relief is necessary and warranted under the circumstances.

**FACTUAL BACKGROUND**

The factual background relevant to this application is set forth in greater detail in the Declaration of Dr. Tobias Seng, and the exhibits annexed thereto, and the Declaration of Roger Boppart, and the exhibits annexed thereto, all of which are incorporated herein by reference.

**ARGUMENT**

**I.      STANDARD OF REVIEW**

Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to issue an injunction after notice to the adverse party. Fed. R. Civ. P. 65(a). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc.,* 48 F.3d 618, 620 (1st Cir. 1995). "Thus, if the court ultimately finds for the movant, a preliminary injunction provides the court with a method for preventing or minimizing any current or future wrongs caused by the defendant." *Annalee Mobilitee Dolls, Inc. v. Towsend Design Studios, Inc.,* No. Civ. 03-327-JD, 2003 WL 22901680, at *6 (D.N.H. Dec. 9, 2003) (citing *CMM Cable Rep., Inc.,* 48 F.3d at 620)).

"Under the accepted framework [of Fed. R. Civ. P. 65], the four elements that a district court faced with a motion for a preliminary injunction must assess are the following: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996), both

of the first two factors, likelihood of success and irreparable harm, "are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009), quoting *Charlesbank Equity Fund II*, 370 F.3d at 162.  Nonetheless, "[t]he greater the likelihood of success on the merits, the less risk of irreparable harm to the plaintiff must be shown." *Coalition to Protest Democratic Nat. Convention v. City of Boston*, 327 F.Supp.2d 61, 69 (D. Mass. 2004), citing *Ross-Simmons*, 102 F.3d at 19.  "In conjunction with the use of this standard, trial courts have wide discretion in making judgments regarding the appropriateness *vel non* of preliminary injunctive relief." *Id*.

Novi readily satisfies the requirements for obtaining a preliminary injunction here.  In light of the nature of the relief sought, simply to preserve the status quo and to make sure that any ultimate money judgment issued in Novi's favor is effectual, a preliminary injunction should entered against Defendants.

### A. Novi is Likely to Succeed on the Merits of its Claims

Novi has a strong likelihood that it will succeed on the merits of its claims.  This is a simple action initiated for the purpose of collecting unpaid invoices in connection with the Goods supplied by Novi without protest or objection pursuant to the parties' agreements.  To that end, Novi has asserted claims for goods sold and delivered, breach of contract and, alternatively, unjust enrichment, among others.  To establish a claim for goods sold and delivered, there must be "the existence of a business relationship between the parties, [the buyer's] purchase of goods from [the seller], and an outstanding indebtedness" on the account.  *Consumer Product Distributors, Inc. v. Elseidy*, 2010 Mass. App. Div. 269, 270.  "To prevail on a claim for breach of contract, [Novi] must demonstrate that there was an agreement between the parties; the agreement was supported

4

by consideration; [Novi] was ready, willing, and able to perform [its] part of the contract; [Defendants] committed a breach of the contract; and [Novi] suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016).  For unjust enrichment, Defendants must have knowingly received and accepted a benefit from Novi and the acceptance of the benefit is inequitable under the circumstances.  *Primerica Life Ins. Co. v. Bailey*, Civil Action No.: 20-cv-10743-ADB, 2021 WL 927462, at *3 (D. Mass. Mar. 11, 2021); *Gottlieb v. Amica Mutual Ins. Co.*, Civil Action No. 20-cv-10509-DJC, 2020 WL 7496493, at *4 (D. Mass. Dec. 21, 2020) (unjust enrichment requires "(1) a benefit conferred … (2) an appreciation or knowledge of the benefit; and (3) that acceptance or retention … of this benefit would be inequitable without payment for its value").

The allegations at issue here meet these elements.  Novi's moving papers demonstrate the existence of a business relationship between Novi and Earth, including in multiple written agreements where Earth acknowledged its existing debt to Novi, Novi's shipment and delivery of the Goods to Earth pursuant to written invoices and Earth's nonpayment for the Goods.  There simply is no excuse or defense to Earth's non-payment and ultimately liability here is without question.  The fact of the matter is, Defendants are in possession of the Goods, or soon will be, and have not paid for them.  There is not just a likelihood that Novi will be successful on its claims, there is a strong likelihood that Novi will be successful on its claims.

### B. Novi Will Suffer Irreparable Harm in the Absence of an Injunction

Novi's strong showing of likelihood of success on the merits diminishes the showing it must make on the irreparable harm factor. *Vaqueria Tres Monjtas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) ("the measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits").

"[D]istrict courts have broad discretion to evaluate the irreparability of alleged harm." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000). "In general, harm which can be adequately compensated with money damages is not considered to be irreparable." *Fleet Nat. Bank v. Rapid Processing Co., Inc.*, 643 F.Supp.1065, 1066 (D. Mass. 1986).

Novi will suffer irreparable harm in the absence of an injunction. *First*, the loss of the Goods by Defendants selling it during the pendency of this action, the very collateral securing the debt owed to Novi, constitutes irreparable harm. *See*, *e.g.*, *Commerce Bank v. First State Trucking, Inc.*, 384 F. Supp. 3d 84, 86 (D. Mass. 2018) (granting injunction against Defendants from interfering with collateral that Defendants pledged as a security for a loan); *Unibank for Savings v. 999 Private Jet, LLC*, Civil Action No.: 4:18-cv-40134-TSH, 2018 WL 10247597, at *2 (D. Mass. Sept. 10, 2018) ("I also find that Commerce Bank will suffer irreparable harm if Defendants were to maintain control and possession of the collateral while continuing not to make payments due under the Note"); *Textron Fin. Corp. v. Freeman*, C.A. No. 09-087S, 2010 WL 5778756, at *5 (D. R.I. Oct. 28, 2010) ("Plaintiff counters that loss of the security of collateral—separate and apart from its pure money damages—constitutes irreparable harm. I agree with Plaintiff"); *Textron Financial Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV, 2008 WL 4716965, at *8 (S.D. Fla. Oct. 22, 2018) (finding irreparable injury due to the existence of a "significant risk that [debtor] will continue to liquidate the assets that constitute the Collateral owed to [creditor] and, for all practical purposes, frustrate [creditor's] rights to collect the Collateral").

*Second*, Sweedler and Windsong's actions to render Earth insolvent and render a money judgment in Novi's favor ineffectual provide an independent an additional basis of irreparable harm. It is well-established that under such circumstances "an action for damages would be inadequate because the defendant is insolvent or its assets are in danger of depletion and dissipation

6

. . . a preliminary injunction may be appropriate." *Id.* (holding defendants' assets were "in danger of depletion, dissipation, and disappearance" and thus "a preliminary injunction [was] necessary to protect a damages remedy"), citing *Teradyn, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986) (affirming trial court's entry of preliminary injunction in breach of contract action to protect the damages remedy where defendant's assets were being used to pay off creditors' claims and wind down expenses in a liquidation process); *see also PayPal, Inc. v. NantHealth, Inc.*, 2020 WL 2193839, *1 (Mass. Super. Ct. Feb. 7, 2020) (Green, J.) (noting where "the defendant is insolvent or its assets are in danger of depletion and dissipation" as an exception to the general rule); *Goldberg v. Omega Associates*, 2005 WL 406428, *5 (Mass. Super. Ct. Feb. 14, 2005) (Brassard, J.) ("a preliminary injunction may be granted when necessary to protect a plaintiff's damages remedy"). The United States Supreme Court has "held that a preliminary injunction, designed to freeze the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be insolvent at the time of judgment." *Teradyn*, 797 F.2d at 52, citing *Deckert v. Independence Shares Corporation*, 311 U.S. 282 (1940). "Thus, a preliminary injunction may be granted when it is necessary to protect the damages remedy." *Fleet Nat. Bank*, 643 F.Supp. at 1066.

Accordingly, Novi will suffer irreparable harm in the absence of an injunction in light of Earth's possession and dissipation of the collateral in violation of the parties' agreement and Earth's insolvency rendering a money judgment useless.

### C.     **The Balance of Harm Strongly Favors Novi**

Although of lesser importance, the final factors to evaluate in connection with a motion for preliminary injunction are whether such relief would comport with the balance of the equities in the case and be in the public interest. More specifically, the Court must balance "the hardship that

7

will befall the nonmovant if the injunction issues . . . with the hardship that will befall the movant if the injunction does not issue." *Mercado-Salinas v. Bart Enter. Intern., Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011). Moreover, a preliminary injunction must also be in the public interest. "The public interest that is referred to in the test [is] the public's interest in the issuance *of the injunction itself*." *Braintree Labs, Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 45 n.8 (1st Cir. 2010) (emphasis in original). However, if there is no measurable effect on the public interest, the Court relies more heavily on the other criteria." *Ross-Simons*, 102 F.3d at 15 (reviewing "the effect, *if any*, on the public interest") (emphasis added).

Where, as here, the Company merely seeks a preliminary injunction maintaining the status quo by enjoining the Defendants from disposing or encumbering assets, the balance of equities shifts in its favor. *See Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 WL 1358662, *9 (D. Mass. 2012) (Saylor, J.) (allowing preliminary injunction limited to measures necessary to maintain the status quo by prohibiting defendants from distributing certain licenses to new customers for the duration of the litigation). Indeed, no measurable harm can come of the Defendants by merely enjoining them from disposing of the Goods and maintaining the status quo for the duration of this litigation. On the other hand, however, in the event a preliminary injunction does not issue and Defendants are not enjoined from disposing of the Goods, Novi will be left without any protection of its damages remedy in a matter where it has established a likelihood of success and liability is clear.

Lastly, the public interest is not heavily impacted in this private commercial dispute. But because the requested injunction merely seeks to preserve the status quo and enforce the parties' agreements, the public interest is served by the requested injunction. Novi has met its burden of establishing each of the factors necessary for the requested injunction to issue against Defendants.

## CONCLUSION

For all of the foregoing reasons, Novi's motion for a preliminary injunction should be granted.

Dated: Boston, Massachusetts
      June 22, 2022

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
*Attorneys for Plaintiff*

By: /s/ Adam Sisitsky
Adam Sisitsky (BBO # 637532)
Ryan Dougherty (BBO # 703380)
One Financial Center
Boston, Massachusetts 02111
Tel.: (617) 542-6000
Email: alsisitsky@mintz.com
Email: rtdougherty@mintz.com


**TARTER KRINSKY & DROGIN LLP**
Andrew N. Krinsky (BBO # 280160)
Jonathan E. Temchin  (*Pro hac vice* forthcoming)
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: akrinsky@tarterkrinsky.com
Email: jtemchin@tarterkrinsky.com

9