UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10952-RGS

NOVI FOOTWEAR INTERNATIONAL CO. LIMITED,

v.

EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC, and
WILLIAM SWEEDLER.

MEMORANDUM AND ORDER ON
MOTION FOR PRELIMINARY INJUNCTION AND
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

July 21, 2022

STEARNS, D.J.

Novi Footwear International Co. Limited (Novi) brought this lawsuit against Earth Opco LLC (Earth); its private equity owner, Windsong Capital Management LLC (Windsong); and Windsong's chairman and CEO, William Sweedler. Novi's Complaint alleges that Earth breached an agreement to pay for footwear products it sold to Earth, and to allow Novi to repossess the footwear upon Earth's default. Novi moved for a preliminary injunction prohibiting defendants from disposing of the footwear that remained in Earth's possession. On July 14, 2022, the court upon Novi's motion entered a "stand-still" order (TRO) and scheduled argument on the motion for a

preliminary injunction.   Defendants promptly moved to dissolve the TRO and filed an opposition to the motion for a preliminary injunction.   After hearing oral argument on July 21, 2022, and having the benefit of the parties' briefs, the court will <u>ALLOW</u> the motion for a preliminary injunction and <u>DENY</u> the motion to dissolve the TRO.

## BACKGROUND

Novi, based in Hong Kong, provides sourcing, manufacturing, and export services to customers like Earth, which owns trademarks for the sale of footwear.   In June of 2020, Novi and Earth entered into a Product Exclusivity Agreement in which Earth agreed to purchase from Novi footwear products to be sold under the Earth brand.   Payments were to be made by Earth through a standby letter of credit (initially in the amount of $1.5 million) or by tendering 30% of the purchase price with orders and the remaining 70% upon shipment.

Windsong, a private equity company, acquired Earth in August of 2021.   The parties conducted business as usual for a few months. However, in November of 2021, Earth proposed to make only partial payments on outstanding invoices.   The parties entered a letter agreement that allowed Novi to sell the footwear (under the Earth mark) if Earth fell

more than $3 million behind in its payments.    That arrangement lasted only until January 3, 2022, when Novi informed Earth that it would stop all further shipments to Earth unless the parties could agree to a more concrete payment plan.

That plan materialized in a February 13, 2022 Letter Agreement.    The Agreement stipulated that Earth owed Novi $9.6 million for the Spring/Summer 2022 footwear Novi had shipped prior to January 10, 2022, and $10.4 million for previously delivered Fall/Winter 2021 footwear. With respect to the Spring/Summer 2022 footwear, Earth agreed to pay a total of roughly $8.2 million in installments by the end of March, with the balance to be paid by the due dates on the relevant invoices.    As for the Fall/Winter 2021 footwear, the agreement acknowledged that Earth had drawn down its $5.5 million letter of credit, leaving a balance of $4.9 million that Earth was to pay by September 30, 2022.

Earth also agreed that Novi could repossess the footwear if Earth defaulted on its payment obligations.    The February 13, 2022 Letter Agreement stated:

> In case of bankruptcy of EARTH or any default (e.g., EARTH is defaulting to any payment commitments hereunder) NOVI will not pass any original [bill of lading]/invoice to EARTH but is entitled to nominate any third Party or any logistics provider as

its will to clear the GOODS in the port, declare and pay customs for those goods and bring them to any warehouse of NOVI's choice. In any case EARTH will pay forwarding cost and insurances and hold NOVI harmless and if ask[ed] will transfer all its rights to NOVI without charging any fees or expenses . . . . For clarification: In case EARTH is defaulting to any of its payments or not paying any invoice until the due date, NOVI remains the unrestricted owner of the GOODS and is entitled to transfer title of the GOODS anytime to any person at its wish and is further entitled to sell to any person without any restriction or limitations anytime.

Decl. of Dr. Tobias Seng (Seng Decl.) Ex. D (Dkt # 8) at 18.

The Agreement went on to state,

In case of any default by Earth to any of the payment plans of this agreement, NOVI at any time has the right to buy back all or parts of the remaining goods still in the ownership of Earth (all Spring /Summer 2022 and Autumn/Winter 2021 and 2022 goods) from Earth at 100% of their respective FOB value, offsetting against the remaining open payables from Earth to NOVI.

*Id.*

Novi resumed filling Earth's orders until a month later when Earth informed Novi that it was no longer able to make the payments required under the February 13, 2022 Letter Agreement.  On April 25, 2022, Novi sent a letter to Earth demanding payment on all outstanding invoices, totaling $15,190,497.55.  A few weeks later, Novi sent an email to Sweedler and representatives of Earth and Windsong laying claim under the February 13, 2022 Letter Agreement to all Novi-sourced footwear at Earth's warehouse

4

in Mississippi as well as to any footwear then in transit to Earth.   Novi wrote

that it would "submit a proposal on how to handle the logistics."   Decl. of

Roger Boppart (Boppart Decl.) Ex. A (Dkt # 7) at 7.   Windsong partner

Andrew Tarshsis wrote a reply disputing Novi's entitlement to the footwear

stored in Earth's warehouse:

> With respect to Novi's claim that it has the authority to
> "repossess" Earth's inventory in the US, we do not agree with
> your interpretation of the February 13, 2022 letter or that the
> letter provides any basis for Novi to unilaterally take back the
> inventory (including the in transit goods). (You should also be
> aware from filings made in the US, that all Earth inventory
> located at the Mississippi warehouse (for which a bill of lading
> has been delivered) is the secured collateral of Earth's lenders
> and cannot be "repossessed" by Novi or any other party.)

Boppart Decl. Ex. B. at 10.

Novi now seeks an injunction to prohibit defendants from disposing of

the footwear products.

## DISCUSSION

The party seeking a preliminary injunction must establish "(1) a

substantial likelihood of success on the merits, (2) a significant risk of

irreparable harm if the injunction is withheld, (3) a favorable balance of

hardships, and (4) a fit (or lack of friction) between the injunction and the

public interest."   *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020),

quoting *Nieves Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

While the court considers all four factors, likelihood of success on the merits is the "main bearing wall" of the preliminary injunction framework.  *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.2d 12, 16 (1st Cir. 1996).

As a threshold matter, defendants' reliance on *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) for the argument that the court lacks jurisdiction to issue an injunction is misplaced. In *Grupo Mexicano*, the Supreme Court held that in actions for monetary damages, federal courts may not issue preliminary injunctions restraining defendants from disposing of assets in which a plaintiff holds no lien or equitable interest.  *See id.* at 333.

By contrast, where a plaintiff "asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999); *see also Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 79 (W.D.N.Y. 2018) (*Grupo Mexicano* does not apply where "Plaintiff holds a security interest in the Collateral and there is a 'strong nexus' between the Collateral and any future money judgment.").   Many courts have also held, and the First Circuit has strongly suggested that it agrees, that *Grupo*

*Mexicano* does not apply to cases implicating claims in both law and equity. *See Iantosca v. Step Plan Servs., Inc.*, 506 F.3d 24, 33-34 (1st Cir. 2010) ("If it were necessary to rule on the point, we would likely agree with decisions concluding that a court may, consistent with *Grupo Mexicano*, issue asset freezing injunctions in 'mixed' cases where both equitable and legal remedies are sought.") (internal punctuation omitted).

Thus, a court confronting a motion to preliminarily enjoin the alienation of assets should ask two questions: "First, do the claims in the suit seek cognizable relief in equity against specific assets of the defendant? . . . . Second, would a preliminary injunction freezing these assets be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed?" *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 204 (D. Mass. 1999). Here, the answer to both questions is yes.

The court has authority to issue an injunction here because, first, Novi for all practical purposes possesses a security interest (or its equivalent) in the disputed footwear. In exchange for the easing of repayment terms (by permitting amounts owing to be paid in installments) Earth agreed that, should it default, Novi was entitled to repurchase and sell any of the footwear

consigned to Earth.   *See* Seng Decl. Ex. D at 18.   This right of replevin was plainly intended to secure the payments Earth owed by using the footwear as collateral.   Further, Novi seeks equitable relief in the form of the disgorgement of Earth's unjust enrichment.   *See Shaoxing Bon Textiles, Co., Ltd. v. 4-U Performance Grp. LLC*, 2017 WL 737315, at *2 (S.D.N.Y. Feb. 6, 2017) (entering preliminary injunction freezing assets where plaintiff brought claim for unjust enrichment).   Under the circumstances, a preliminary injunction is necessary to preserve the *status quo* until Novi's claims can be litigated on the merits.   Thus, *Grupo Mexicano* does not bar this court from entering the relief Novi seeks.

## A.    Likelihood of Success on the Merits

Novi seeks a preliminary injunction based on its claims for breach of contract, goods sold and delivered, and unjust enrichment.   To establish breach of a contract, a plaintiff must show (1) a valid agreement between the parties; (2) that the defendant breached the agreement; and (3) damages. *See Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995).   The claim for goods and services delivered requires establishing that defendants failed to pay for the goods they purchased from Novi, *see Consumer Prod. Distribs., Inc. v. Elseidy*, 2010 WL 5313267, at *2 (Mass. App. Ct. Dec. 16,

2010), and is duplicative of Novi's breach of contract claim, *see 4M Fruit Distribs., Inc. v. Crescent Produce, Inc.*, 2014 WL 2547557, at *4 n.2 (D. Mass. June 4, 2014).   Unjust enrichment is an equitable alternative to a breach of contract claim, and is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience."   *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005).   To recover on a theory of unjust enrichment, a plaintiff must demonstrate "(1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value."   *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, 210 F. Supp. 3d 294, 309 (D. Mass. 2016).

On the record before the court, Novi appears likely to succeed on the merits of its claims.   The February 13, 2022 Letter Agreement required Earth to pay for footwear Novi had previously delivered and to allow Novi to repossess the footwear in Earth's warehouse in the event of default.   Yet Earth failed to pay for the footwear it purchased and retained the goods. Novi will likely be able to establish a breach of contract, liability for goods and services delivered, and/or unjust enrichment at least as to Earth.

9

### B.    Irreparable Harm

Novi will likely suffer irreparable harm in the absence of an injunction. A "strong indication" that a defendant "may dissipate or conceal assets" can suffice to establish irreparable harm.   *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005).   A defendant's alienation of the plaintiff's secured collateral under a contract constitutes irreparable harm.   *See Commerce Bank v. First State Trucking, Inc.*, 340 F. Supp. 3d 84, 86 (D. Mass. 2018); *see also Textron Fin. Corp. v. Freeman*, 2010 WL 5778756, at *5 (D.R.I. Oct. 28, 2010).   Defendants do not deny that before the court ordered Earth to stop disposing of the footwear products in question, it had continued to ship the footwear to its customers.   *See* Opp'n (Dkt # 27) at 1 n.1.   The court finds that an injunction is necessary to prevent Novi from suffering irreparable harm.

### C.    Balance of Hardships

The equities favor a preliminary injunction.   In the absence of a preliminary injunction, Novi will likely lose the opportunity to enforce its right to payment under the February 13, 2022 Letter Agreement. Defendants claim that Earth will suffer hardship because it will not be able to sell the Novi footwear products it now possesses, which are seasonal and

subject to changes in taste.    But defendants cannot rightfully sell property which the parties' Agreement requires them to return to Novi.

### D.    Public Interest

The parties do not vigorously contest this final preliminary injunction factor, but the court notes that the only interested parties are Novi, which has the superior right to the goods in question, and the private equity company that securitized its stake in Earth by asserting a security interest in all the assets in Earth's possession (including those of Novi).    Other than a general interest in seeing contracts enforced, the public has no interest in this dispute.

### E.    Bond

The court agrees with defendants that Novi must post security in conjunction with the preliminary injunction.    *See* Fed. R. Civ. P. 65(c).    As much of the footwear in Earth's possession has never been paid for, a nominal bond of $50,000 representing the litigation cost of an appeal of this motion (should the appeal succeed) is sufficient for present purposes.    Novi must also elect within thirty days whether to assert its right to repurchase the products currently in the ownership of Earth.

## ORDER

For the foregoing reasons, Novi's motion for a preliminary injunction is <u>ALLOWED</u>.   Earth is restrained from disposing of goods manufactured by Novi.   Novi is ordered to give security in the amount of $50,000.   The TRO will convert to a preliminary injunction, and defendants' motion to dissolve the TRO is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE