**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| NOVI FOOTWEAR INTERNATIONAL CO. LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC, AND WILLIAM SWEEDLER, | ) ) ) ) | Civil Action No. 1:22-cv-10952-RGS |
| Defendants, | ) ) | |
| SECOND AVENUE CAPITAL PARTNERS LLC, | ) ) ) | |
| Intervenor Defendant. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF SECOND AVENUE CAPITAL**
**PARTNERS LLC'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     BACKGROUND ............................................................................................... 6

        A.      Second Avenue And Its First-Priority Security Interest In Earth's Goods ............ 6

        B.      Novi And Its Relationship With Earth ................................................................. 7

        C.      This Litigation, Novi's Alleged Interest In Earth's Goods, And Choice Of
                Law ...................................................................................................................... 8

III.    LEGAL STANDARD ........................................................................................ 9

IV.     ARGUMENT ..................................................................................................... 10

        A.      Earth Has Title To The Goods In Its Possession, And Second Avenue's
                Security Interest Attached Upon Delivery of the Goods, Even If Earth Did
                Not Pay ................................................................................................................ 10

        B.      Novi's Rights As A Reclaiming Seller Are Inferior To Second Avenue's
                Rights As A Secured Creditor ............................................................................. 15

        C.      Even If Novi Is A Consignor, Its Unperfected Security Interest Is Inferior
                To Second Avenue's Perfected Security Interest ................................................ 17

        D.      Novi Could Have Protected Itself -- Both Legally And Practically -- But
                Did Not ................................................................................................................ 19

V.      CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akron Brick & Block Co. v. Moniz Eng'g Co.*,
　365 Mass. 92 (1974) ........................................................................................11

*In re Aleris Int'l, Inc.*,
　456 B.R. 35 (Bankr. D. Del. 2011) ....................................................3, 12, 13, 15

*In re Clean Burn Fuels, LLC*,
　492 B.R. 445 (Bankr. M.D.N.C. 2013)..........................................................12

*In re Cont'l Fire Trucks, Inc.*,
　33 B.R. 713 (Bankr. D. Mass. 1983) ..............................................................12

*In re Daley, Inc.*,
　17 U.C.C. Rep. Serv. 433 (Bankr. D. Mass. 1975)........................................16

*In re Downey Creations, LLC*,
　414 B.R. 463 (Bankr. S.D. Ind. 2009) .............................................................9

*E.A. Miller, Inc. v. South Shore Bank*,
　405 Mass. 95 (1989) .........................................................................4, 9, 15, 16

*In re Hayward Woolen Co.*,
　3 U.C.C. Rep. Serv. 1107 (Bankr. D. Mass. 1967)......................................3, 16

*In re Montreal, Me. & Atl. Ry.*,
　799 F.3d 1 (1st Cir. 2015)..................................................................................5

*National Cash Register Co. v. Firestone & Co.*,
　346 Mass. 255 (1963) ............................................................................ *passim*

*In re Panthera Enters., LLC*,
　622 B.R. 201 (Bankr. N.D. W. Va. 2020)......................................................12

*In re Payne*,
　2006 Bankr. LEXIS 4199 (Bankr. M.D.N.C. Dec. 6, 2006)..........................12

*In re Piknik Prods. Co.*,
　346 B.R. 863 (Bankr. M.D. Ala. 2006).......................................................9, 19

*Plumb v. Casey*,
　469 Mass. 593 (2014) ...................................................................................4, 18

*Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C.*,
    369 F.3d 603 (1st Cir. 2004) ........................................................................10, 16

*Rayfield Inv. Co. v. Kreps*,
    35 So. 3d 63 (Fla. Dist. Ct. App. 2010) ................................................5, 18, 19, 20

*In re Rome Family Corp.*,
    407 B.R. 65 (Bankr. D. Vt. 2009) ............................................................................12

*In re Samuels & Co.*,
    526 F.2d 1238 (5th Cir. 1976) (en banc) ........................................................ *passim*

*In re State St. Auto Sales, Inc.*,
    81 B.R. 215 (Bankr. D. Mass. 1988) ......................................................................18

*In re Steel Stadiums*,
    2013 Bankr. LEXIS 148 (Bankr. N.D. Tex. Jan. 14, 2013)..................................4, 17

*Stillwater Nat'l Bank & Tr. Co. v. CIT Grp./Equipment Fin., Inc.*,
    383 F.3d 1148 (10th Cir. 2004) ..............................................................................12

*Szabo v. Vinton Motors, Inc.*,
    630 F.2d 1 (1st Cir. 1980)..........................................................................16, 19, 20

*In re T & R Flagg Logging, Inc.*,
    399 B.R. 334 (Bankr. D. Me. 2009)........................................................................12

*Trust Co. Bank v. Gloucester Corp.*,
    419 Mass. 48 (1994) ...................................................................................... *passim*

*In re TSAWD Holdings, Inc.*,
    601 B.R. 599 (Bankr. D. Del. 2019) .......................................................................18

*Unibank for Sav. v. 999 Private Jet, LLC*,
    31 F.4th 1 (1st Cir. 2022) ........................................................................................14

*In re Wild W. World, L.L.C.*,
    2008 Bankr. LEXIS 3580 (Bankr. D. Kan. Oct. 17, 2008)............................2, 12, 20

**Statutes**

Mass. Gen. Laws c. 106, Article 1 ...................................................................3, 11, 16

Mass. Gen. Laws c. 106, Article 2 .......................................................................*passim*

Mass. Gen. Laws c. 106, Article 9 .......................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................9

Secured Transactions Under the Uniform Commercial Code (Matthew Bender)....................5, 17

White & Summers, Uniform Commercial Code: Practitioner Treatise Series  ......................12, 13

William L. Tabac, *The Unbearable Lightness of Title Under the Uniform Commercial Code*, 50 Md. L. Rev. 408 (1991) ......................................................................2

## I.    PRELIMINARY STATEMENT

The question presented by this case is a recurring one.  Under the UCC, who has the superior interest in goods delivered to a buyer: the unpaid seller of the goods or the buyer's secured creditor?  For the last 50 years, courts have repeatedly held that the secured creditor's interest is superior to any interest the unpaid seller may have.

The Supreme Judicial Court of Massachusetts ("SJC") confronted this question in *National Cash Register Co. v. Firestone & Co.*, 346 Mass. 255 (1963).  There, a seller of goods (National Cash Register) executed a contract with the buyer for the sale of a cash register.  *Id.* at 256–57.  The sales contract was "conditional," included a "retention of title" by the seller, and provided that delivery would be made in the future.  *See id.* at 256–58.  Several months later, the buyer took a loan from a lender (Firestone & Co.), which was secured with the buyer's personal property, including property the buyer may acquire in the future.  *Id.*  The lender promptly recorded its interest.  *Id.* at 257.  Days later, the seller delivered the cash register to the buyer.  *Id.*  The seller recorded its interest in the goods roughly one month later.  *Id.*

The buyer then defaulted under its agreements with both the seller and the lender.  *Id.* at 257.  The lender seized and sold the cash register, and the seller sued the lender for conversion. *Id.* at 256–57.  The SJC held that the lender had the superior interest in the goods.  *Id.* at 258.  It did so because the cash register became "subject to the [lender's] security agreement when delivered."  *See id.*  Under the UCC, the seller's purported retention of title did not "affect the rights of the [lender]."  *Id.*  The lender was therefore the senior secured creditor, because it had recorded its interest before the seller.  *See id.*  The Court observed that the seller "could have completely protected itself" by timely recording its interest.  *Id.*  Because the seller failed to do so, however, a straightforward application of the UCC required ruling for the earlier-filed lender.  *See id.*

1

Although *National Cash Register* is an older case, it remains good law.  In fact, in the decades that followed that decision, court after court (including the SJC again) and commentator after commentator have concluded that a secured lender holds a superior interest to that of an unpaid seller.  *See, e.g.*, *Trust Co. Bank v. Gloucester Corp.*, 419 Mass. 48, 52–53 (1994) (holding that a secured creditor held a superior interest to that of an unpaid seller); *In re Samuels & Co.*, 526 F.2d 1238, 1241 (5th Cir. 1976) (en banc) ("This case raises one primary question: under the Uniform Commercial Code . . . is the interest of an unpaid cash seller in goods already delivered to a buyer superior or subordinate to the interest of a holder of a perfected security interest in those same goods? [U]nder Article Nine, the perfected security interest is unquestionably superior to the interest of the seller."); *In re Wild W. World, L.L.C.*, 2008 Bankr. LEXIS 3580, at *6 (Bankr. D. Kan. Oct. 17, 2008) (holding that secured creditor of buyer, who perfected first, had priority over unpaid seller who failed to timely perfect its interest); William L. Tabac, *The Unbearable Lightness of Title Under the Uniform Commercial Code*, 50 Md. L. Rev. 408, 430 & n.145 (1991) (acknowledging that "[t]he *Samuels* result is so universally accepted that its rule is sometimes invoked without citation").

Novi Footwear International Co. Limited ("Novi") has adopted different positions at different times concerning its alleged interest in the goods it has delivered to Earth OpCo LLC ("Earth").  For the reasons that follow, however, each of the three main arguments that sellers sometimes raise in cases like this one fail as a matter of law.

First, sellers sometimes point to contractual provisions stating that title remained with the seller until the buyer fully paid for the goods.  Because the buyer did not pay, the seller argues that the buyer never held title, so the lender's security interest could not have attached to the goods. *See Samuels*, 526 F.2d at 1242–43.  This argument runs headlong into the text of the UCC and

controlling SJC precedent.  Under the UCC, the buyer has title to the goods following delivery, and any attempt by the seller to retain "title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."  Mass. Gen. Laws c. 106, § 2-401(1)–(2); *see, e.g.*, *Gloucester Corp.*, 419 Mass. at 52 n.7.  Indeed, so long as the buyer receives the goods pursuant to an agreement "endowing him with *any* interest other than naked possession, the debtor has acquired such rights as would allow [a] security interest to attach."  *Gloucester Corp.*, 419 Mass. at 50 (quoting Mass. Gen. Laws c. 106, § 9-203 and citing *Samuels*, 526 F.2d at 1249 (alteration and emphasis in original)).

Accordingly, a debtor's possession of goods combined with even a "contingent right[] of ownership," which depends on the satisfaction of conditions that have not occurred (such as payment in full), is sufficient to permit the lender's security interest to attach.  *Id.* at 51; *see In re Aleris Int'l, Inc.*, 456 B.R. 35, 44 (Bankr. D. Del. 2011) ("The caselaw establishes the proposition that once a debtor acquires possession of an item of collateral pursuant to a sales contract or like agreement, the debtor has acquired sufficient 'rights' for Article IX purposes." (internal quotations omitted)).

Second, sellers sometimes argue that they are entitled to reclaim the goods under Article 2 of the UCC.  Although the UCC grants sellers the right to reclaim goods that have not been paid for in certain circumstances, that right is "subject to the right of a . . . good faith purchaser or lien creditor under this Article (section 2-403)."  Mass. Gen. Laws c. 106, § 2-702(3); *see id.* § 2-507 cmt. 3 ("If third parties are involved, Section 2-403(1) protects good faith purchasers.").  Under the UCC, lenders with perfected security interests are "good faith purchaser[s]," and their rights take precedence over the rights of reclaiming sellers.  *Id.* §§ 1-201(b)(29)–(30), 2-702(3), 2-507 cmt. 3; *In re Hayward Woolen Co.*, 3 U.C.C. Rep. Serv. 1107, 1111 (Bankr. D. Mass. 1967),

attached as Ex. 15 to the Declaration of Preston F. Bruno in Support of Second Avenue's Motion for Summary Judgment ("Bruno Decl."); *see also In re Steel Stadiums*, 2013 Bankr. LEXIS 148, at *15–16 (Bankr. N.D. Tex. Jan. 14, 2013).

By the time this issue reached the SJC in 1989, *Samuels* had so firmly established this point that the seller conceded that the rights "of a perfected security interest are superior to those of the plaintiffs, as unpaid reclaiming sellers." *E.A. Miller, Inc. v. South Shore Bank*, 405 Mass. 95, 99 n.6 (1989). The SJC nevertheless approvingly cited *Samuels* to confirm the point. *See id.* Second Avenue Capital Partners LLC's ("Second Avenue") security interest thus trumps any reclamation right held by Novi.

<u>Third</u>, Novi may argue that it is a consignor of Earth's goods. Under the UCC, consignors can obtain a purchase-money security interest in inventory that would be superior to the rights of most other secured creditors. *See* Mass. Gen. Laws c. 106, § 9-103(d). According to the UCC's text and the SJC, however, those rights are unavailable to Novi here. To obtain a purchase-money security interest in inventory, a consignor must: (i) perfect its interest before delivering the goods and (ii) provide notice to the buyer's other secured creditors. *Id.* § 9-324(b)–(c); *Plumb v. Casey*, 469 Mass. 593, 600 n.13 (2014) ("[I]f a UCC financing statement is not filed upon consignment, then a consignor retains only an unsecured interest in the consigned item."). It is undisputed that Novi never perfected its security interest, because it neither filed any financing statement nor provided notice of its interest to Second Avenue. *See* L.R. 56.1 Statement of Undisputed Material Facts in Supp. of Second Avenue Capital Partners LLC's Mot. for Summary Judgment ("SUF") ¶¶ 28–30. At most, Novi therefore holds an unperfected security interest, which is inferior to Second Avenue's perfected security interest. *See* Mass. Gen. Laws c. 106, § 9-322(a)(1)–(2).

Although the arguments discussed above depend on different UCC provisions, they all fail for fundamentally the same reason: any other outcome would empower sellers to create precisely the kinds of secret liens that the UCC sought to abolish. *See In re Montreal, Me. & Atl. Ry.*, 799 F.3d 1, 11 (1st Cir. 2015) (recognizing that a "primary goal" of the UCC "is to ensure that other creditors have notice of the security interest."); *Gloucester Corp.*, 419 Mass. at 52–53 (explaining that the UCC meant to promote "efficiency and certainty in secured financing transactions" and to avoid "hidden-title subterfuge"); 1 Secured Transactions Under the Uniform Commercial Code § 6.02[d][i] (Matthew Bender) ("[F]iling financing statements under Article 9 [of the UCC] is designed to serve a public disclosure policy.  Public filing guards against secret liens.").

The framers of the UCC, "by adopting the notice filing system, had the purpose to recommend a method of protecting security interests which at the same time would give subsequent potential creditors and other interested persons information and procedures adequate to enable the ascertainment of the facts they needed to know." *Nat'l Cash Register*, 346 Mass. at 261.  By recording its security interest, Second Avenue gave notice to the world -- including Novi -- of its interest in Earth's goods.  *See* SUF ¶¶ 7–8.  By contrast, Novi seeks to enforce an alleged right that it never recorded, and of which Second Avenue never received notice.  *See id.* ¶¶ 28–30.

The UCC does not permit sellers like Novi to prevail under these circumstances.  As courts in similar cases routinely observe, a seller can "completely protect[] itself," *Nat'l Cash Register*, 346 Mass. at 258, by taking steps that are "simple, not burdensome, and easily satisfied," *Rayfield Inv. Co. v. Kreps*, 35 So. 3d 63, 67 (Fla. Dist. Ct. App. 2010).  Indeed, any alleged unfairness to Novi "is illusory" because Novi could have protected its interest if it "had merely complied with the U.C.C.'s purchase-money provisions."  *Samuels*, 526 F.2d at 1247–48.  Legally, all Novi had to do was file a financing statement and notify Earth's creditors before delivering the goods.  Novi

-- which is part of a highly sophisticated global conglomerate -- also could have required Earth to post an adequate letter of credit before shipping the goods, as it had done in the past, or it simply could have required Earth to pay up front.  Novi did none of those things.  As a result, under an unbroken line of authority stretching back nearly 50 years, Second Avenue's perfected security interest is superior to whatever unrecorded interest Novi claims.

For all of these reasons, this Court should declare that: (1) Second Avenue's interest in the goods delivered to Earth is superior to any interest claimed by Novi; and (2) Second Avenue is entitled to the goods or the proceeds of the sale of the goods.

## II.    BACKGROUND

### A.    Second Avenue And Its First-Priority Security Interest In Earth's Goods.

Second Avenue is a commercial lender.  SUF ¶ 1.  On July 8, 2021, Second Avenue entered into a Security Agreement and a Credit Agreement with Earth (collectively, the "Agreements").  *Id.* ¶¶ 2–3.  The Agreements provided a line of credit and loans to Earth, while Second Avenue received a lien and security interest in Earth's assets.  *Id.* ¶ 4.  Specifically, the Security Agreement granted "a lien on and security interest in and to all of the right, title and interest of" Earth "in, to and under all personal property and interests in such personal property, wherever located, and whether now existing or hereafter arising or acquired from time to time."  *Id.* ¶ 5.  This interest includes "all Goods, including Equipment, Inventory and Fixtures."  *Id.* ¶ 6.

On the same day that Second Avenue entered into the Security Agreement and Credit Agreement with Earth, it perfected its security interest in the Earth's assets by filing a UCC-1 Financing Statement with the Delaware Department of State.  *Id.* ¶ 7.  The Financing Statement described the relevant collateral as "[a]ll assets of the debtor [Earth], wherever located, whether now owned or hereafter acquired or arising, and all products and proceeds of the foregoing."  *Id.* ¶ 8.

6

Earth has repeatedly defaulted and is currently in default under the Credit Agreement. *Id.* ¶ 9.  For instance, on January 24, 2022, Second Avenue notified Earth of its default under the Credit Agreement. *Id.* ¶ 10.  By way of example, Earth failed to comply with the minimum Consolidated EBITDA covenant set forth in § 7.20(a) of the Credit Agreement with respect to the Measurement Period ending on November 30, 2021. *Id.* ¶ 11.  Earth's defaults triggered all of Second Avenue's rights as Earth's secured creditor under the Agreements and the UCC.

   B.   Novi And Its Relationship With Earth.

   "Novi is a member of the Wortmann Group of companies, one of the largest shoe production and distribution companies in Europe." *Id.* ¶ 15.  Earth owns trademarks that it uses in the sale of footwear in the United States and elsewhere, while Novi is a footwear manufacturer. *Id.* ¶¶ 16–17.  Novi and Earth contracted for Novi to supply footwear to Earth that Earth would then sell under its trademarks. *Id.* ¶ 18.

   Novi began shipping footwear to Earth pursuant to a contract dated June 10, 2020. *Id.* ¶ 19. Novi required Earth to post a letter of credit in connection with its orders, which was originally in the amount of $1.5 million, but was ultimately raised to $5.5 million as of November 20, 2020. *Id.* ¶ 20.  After Novi drew all $5.5 million from that letter of credit in January 2022, Novi alleges that Earth still owed it at least $4.9 million. *Id.* ¶ 21.  Rather than require Earth to post another letter of credit, however, Novi entered into a new contract with Earth dated February 13, 2022. *See id.* ¶ 22.  Under these contracts, Novi delivered footwear to Earth, and the goods Earth has not sold are currently in a warehouse in Mississippi. *Id.* ¶¶ 23–24.

   The February 13, 2022 contract offered Novi two alternative remedies in the event that Earth failed to pay.  First, the contract purported to give Novi the right to retain title to the goods until Earth paid for them in full.  Bruno Decl., Ex. 2 at ECF Page No. 18 ("The ownership of the GOODS remains with NOVI until the [bill of lading] and invoice is handed over to EARTH . . . .

7

In case of bankruptcy of EARTH or any default (e.g., EARTH is defaulting to any payment commitments hereunder) NOVI will not pass any original [bill of lading]/invoice to EARTH.") (Seng. Decl.) (Dkt. No. 8).  Alternatively, the contract contemplated that Earth would acquire ownership of the goods, but, in the event of default, that Novi would have the right to "buy back all or parts of the remaining goods still in the ownership of Earth."  *Id.*  Novi evidently chose to exercise this second remedy:  it does not claim to have withheld any bill of lading from Earth, and, on July 29, it purported to "exercise[e] its option to purchase the goods sold by [Novi] to [Earth]," which Novi acknowledged were "still owned by [Earth]."  SUF ¶ 26.

Novi never recorded any security interest in Earth's goods.  *Id.* ¶ 28.  Novi does not claim otherwise, and Second Avenue has not identified any public filing reflecting Novi's alleged interest.  *See id.* ¶ 29.  Prior to Novi's delivery of goods to Earth, Novi never notified Second Avenue of its alleged interest in Earth's goods.  *Id.* ¶ 30.

C.  This Litigation, Novi's Alleged Interest In Earth's Goods, And Choice Of Law.

Novi commenced this litigation against Earth on June 17, primarily seeking damages for goods "sold by Novi and delivered to Earth."  Bruno Decl., Ex. 1 ¶ 1 (Compl.) (Dkt. No. 1).  Novi has characterized its alleged interest in Earth's goods in different ways at different times.  When Novi sought a preliminary injunction against Earth at the beginning of this case, Novi contended that, under Massachusetts law, it held a security interest in Earth's goods.  *See, e.g.*, Bruno Decl., Ex. 7 at 4–6 (Pl.'s Mem. of Law in Supp. of Its Mot. for a Prelim. Inj.) (Dkt. No. 6), Ex. 4 ¶¶ 2, 5–6 (Boppart Decl.) (Dkt. No. 7), Ex. 2 ¶ 11 (Seng Decl.) (Dkt. No. 8), Ex. 8 at 3, 5–8 (Pl.'s Mem. of Law in Opp. to Defs'. Mot. to Partially Dismiss) (Dkt. No. 51).  On that basis, and before Second Avenue intervened in this case, the Court granted Novi's motion for a preliminary injunction prohibiting Earth from disposing of the goods.  Bruno Decl., Ex. 14 at 12.

On July 27, Second Avenue sought to:  (i) intervene in this case and; and (ii) modify the

preliminary injunction, arguing that its interest in the goods was superior to Novi's. Bruno Decl., Ex. 16 at 1 (Second Avenue Capital Partners LLC's Unopposed Em. Mot. to Intervene) (Dkt. No. 42), Ex. 17 at 14 (Mem. of Law in Supp. of Second Avenue Capital Partners LLC's Em. Mot. to Modify the Prelim. Inj.) (Dkt. No. 45). In defense of the preliminary injunction it previously obtained, Novi argued that, under Hong Kong law, it deliberately "chose not to" create "a security interest" in Earth's goods. Bruno Decl., Ex. 9 at 7 (Pl.'s Mem. of Law in Opp. to Second Avenue Capital Partners LLC's Em. Mot. to Modify the Prelim. Inj.) (Dkt. No. 63). The Court rejected Novi's argument that Hong Kong law applied, but explained that it would like a "more developed record" and more fulsome briefing before resolving whether Second Avenue or Novi holds the superior interest in Earth's goods. *See* Bruno Decl., Ex. 13 at 5:25–6:2, 20:18–21:2.

Second Avenue is not aware of Novi's current position regarding the nature of its interest in Earth's goods. In light of that uncertainty and the Court's prior rulings, this motion addresses why, under Massachusetts law, Novi's unrecorded interest is inferior to Second Avenue's perfected security interest, regardless of how Novi chooses to characterize its interest.

## III.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Courts routinely grant summary judgment, or otherwise rule as a matter of law, in cases concerning priority disputes under the UCC. *See, e.g.*, *E.A. Miller, Inc. v. South Shore Bank*, 405 Mass. 95, 102 (1989) (affirming grant of summary judgment before discovery); *In re Downey Creations, LLC*, 414 B.R. 463, 465 (Bankr. S.D. Ind. 2009); *In re Piknik Prods. Co.*, 346 B.R. 863, 866 (Bankr. M.D. Ala. 2006).

The Court previously concluded that Massachusetts law applies to this dispute. *See* Bruno Decl., Ex. 13 at 5:25–6:2 ("[A]s far as I'm concerned, any claim to the protections of Hong Kong law, at least for purpose[s] of this forum, have been waived."). Massachusetts has adopted the

UCC.  *See generally* Mass. Gen. Laws c. 106.   This Court's role, therefore, is to apply Massachusetts law and the UCC.  *See Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C.*, 369 F.3d 603, 612 (1st Cir. 2004).

## IV.   ARGUMENT

   A.   <u>Earth Has Title To The Goods In Its Possession, And Second Avenue's Security Interest Attached Upon Delivery of the Goods, Even If Earth Did Not Pay.</u>

   Novi may contend that Second Avenue's security interest never attached to Earth's goods, because Earth did not pay for the goods.  This argument takes different forms:  some unpaid sellers argue that title never passed to the buyer, whereas others maintain that the buyer's rights in the collateral were "too slight" to permit a security interest to attach.  *See In re Samuels & Co.*, 526 F.2d 1238, 1246–47 (5th Cir. 1976).  No matter how Novi styles this argument, it fails as a matter of law.

   As a starting point, Novi cannot credibly maintain that title never passed to Earth.  Novi has repeatedly admitted that title did pass to Earth, which is presumably why it now claims a right to "purchase" goods that it sold to Earth, and which are "still owned by EARTH."  SUF ¶ 26.[1]

   Novi's admissions aside, under Massachusetts law, title to the goods passed to Earth upon delivery.  *See* Mass. Gen. Laws c. 106, § 2-401(1)–(2).  Section 2-401(1) provides in relevant part as follows:

> Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.

---

[1]   *See also* Bruno Decl., <u>Ex. 12</u> at 18:22–19:4 (arguing that Novi has the ability to "buy back" the goods under the February 13, 2022 agreement), 20:17–19 (arguing for injunction so that "Novi is given an opportunity to buy back the goods"), 21:7–9 (characterizing agreement as providing that "Novi has the right to buy back the goods"), 21:16–17 ("Novi has a contractual right to buy these goods back . . . .") (July 21, 2022 H'rg Tr.), <u>Ex. 2</u> at ECF Page No. 18 ("In case of any default by Earth to any of the payment plans of this agreement, NOVI at any time has the right to *buy back* all or part of the remaining goods *still in the ownership of Earth* . . . ." (emphasis added)) (Seng Decl.) (Dkt. No. 8); SUF ¶¶ 25, 27.

> *Subject to these provisions* and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

*Id.* § 2-401(1) (emphasis added).

Novi's purported reservation of title in the February 13 contract (Bruno Decl., <u>Ex. 2</u> at ECF Page No. 18 (Seng Decl.) (Dkt. No. 8)) thus did not prevent title from passing to Earth.  Under the UCC, Novi's attempt to reserve title "notwithstanding shipment or delivery . . . is limited in effect to a reservation of a security interest."  Mass. Gen. Laws c. 106, § 1-201(b)(35).

At the August 18 hearing, Novi nevertheless contended that it retained title to the goods.  Pointing to the final clause in § 2-401(1), Novi asserted that "title to the goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."  Bruno Decl., <u>Ex. 13</u> at 17:18–21 (citing § 2-401(1)).  Novi therefore argued that "[o]f course the parties can contract around the UCC if they cho[o]se."  Bruno Decl., <u>Ex. 13</u> at 17:9–11.

Novi is wrong.  Novi's reliance on the final clause of Section 2-401(1) overlooks the beginning of the sentence, which makes the scope of any agreement by the parties "[s]ubject to these provisions."  Mass. Gen. Laws c. 106, § 2-401(1).  "[T]hese provisions" include the immediately preceding sentence, which expressly limits a seller's right to retain title following shipment or delivery.  *See id.*

Because Novi misinterprets Section 2-401(1), it reaches the wrong conclusion about whether parties can contract around the UCC's provisions regarding the passing of title.  The SJC, other courts applying Massachusetts law, and courts applying identical UCC provisions in other states have all concluded that parties may not contract around the UCC's prohibition on a seller reserving title past the date of delivery.  *See Akron Brick & Block Co. v. Moniz Eng'g Co.*, 365 Mass. 92, 95 (1974) (holding that contractual provision stating that seller "remains the owner of

11

[the goods] until [the goods are] paid in full" was merely a reservation of a security interest); *In re Cont'l Fire Trucks, Inc.*, 33 B.R. 713, 715–16 (Bankr. D. Mass. 1983) (similar); *In re Aleris Int'l, Inc.*, 456 B.R. 35, 41 (Bankr. D. Del. 2011) ("[I]rrespective of any agreement between the parties, a seller may never retain title to goods that have already been delivered to the buyer, and any such retention is always reduced to a mere security interest in the delivered goods."); *In re Clean Burn Fuels, LLC*, 492 B.R. 445, 459–62 (Bankr. M.D.N.C. 2013) ("Even if the parties agreed by contract that title to the goods remains with the seller and the buyer had no interest in owning the goods, the most that a seller can retain in the delivered goods is a security interest."); *In re Rome Family Corp.*, 407 B.R. 65, 75 (Bankr. D. Vt. 2009) ("The holdings in . . . cases [discussing reservation of title] are uniform: pursuant to § 2-401, title passes to the buyer upon delivery of the goods, and the seller's interest is limited to a reservation of a security interest, notwithstanding any contractual agreement between the parties that the seller will retain title.").[2]

   A perfected security interest (like Second Avenue's) has priority over any unperfected

---

[2]   *See also Stillwater Nat'l Bank & Tr. Co. v. CIT Grp./Equipment Fin., Inc.*, 383 F.3d 1148, 1152 (10th Cir. 2004) ("Retention of title devices are limited in effect to the reservation of a security interest."); *In re Panthera Enters., LLC*, 622 B.R. 201, 207 (Bankr. N.D. W. Va. 2020) ("UCC 2-401(1) limits the effect" of contractual provision delaying passage of title "to the creation of a security interest."); *In re T & R Flagg Logging, Inc.*, 399 B.R. 334, 338 (Bankr. D. Me. 2009) ("Although the invoice contained a boilerplate term by which [seller] purported to retain title until it was fully paid, the UCC is clear that the term merely effected [seller's] reservation to itself of a security interest."); *In re Wild W. World, L.L.C.*, 2008 Bankr. LEXIS 3580, at *11 (Bankr. D. Kan. Oct. 17, 2008) ("Section 2-401(1) negates the ability to delay passage of title beyond delivery. Any express agreement of the parties or reservation of title in the seller is limited by § 2-401(1). Moreover, § 2-401(1) cannot be varied by custom and usage in the trade, course of dealing, or agreement."); *In re Payne*, 2006 Bankr. LEXIS 4199, at *22 (Bankr. M.D.N.C. Dec. 6, 2006) (holding that title passed from seller to buyer and that "[a]ny attempted reservation of title by [seller] is limited to a reservation of a security interest."); 1 White & Summers, Uniform Commercial Code: Practitioner Treatise Series § 4:31 ("Section 2-401(1) has generally been interpreted as limiting the parties' ability to supersede the Code language governing a seller's right to retention after delivery.").

security interest Novi might have created by attempting to reserve title. *See* Mass. Gen. Laws c. 106, § 9-322(a)(2) ("A perfected security interest . . . has priority over a conflicting unperfected security interest . . . ."); *see also* 4 White & Summers, Uniform Commercial Code: Practitioner Treatise Series § 30:28 ("[T]he seller who sells goods and purports to retain a 'security interest,' but does not file a financing statement, will be an unperfected secured creditor—and perhaps less—once buyer gets possession."). Any argument by Novi premised upon title to the goods therefore fails.[3]

So too does any argument by Novi that Earth's rights in the goods were "too slight" for Second Avenue's interest to attach. *See Samuels*, 526 F.2d at 1246. At the August 18 hearing, the Court observed that Earth possessed goods for which it had not paid, which were a "liability" rather than an asset. Bruno Decl., <u>Ex. 13</u> at 9:4–6. The Court asked "how can you have a perfected interest in a liability?" *Id.* In the parlance of the UCC, the question here is whether the buyer had sufficient "rights in the collateral" to convey a security interest to a lender. Mass. Gen. Laws c. 106, § 9-203(b)(2).[4] Novi may argue that, notwithstanding the passage of title, Earth had no ability to convey a security interest to Second Avenue, because it did not pay (or fully pay) for the goods.

This argument is foreclosed by controlling SJC precedent. The SJC confronted this issue in *Trust Co. Bank v. Gloucester Corp.*, 419 Mass. 48 (1994). There a seller delivered goods to the

---

[3]     Even if Novi had somehow retained title, the outcome would be the same. "The role of title is not significant" in analyzing the effect of a third party's security interest, because "the concept of 'title' is immaterial to whether a security interest attaches." *Trust Co. Bank v. Gloucester Corp.*, 419 Mass. 48, 52 n.7 (1994).

[4]     For a security interest to attach, three elements must be satisfied: (i) the debtor must have executed a security agreement describing the collateral, (ii) the creditor must have given value for the agreement, and (iii) the debtor must have "rights in the collateral." *In re Aleris*, 456 B.R. at 44; Mass. Gen. Laws c. 106, § 9-203(b)(1)–(3)(A). Novi has never disputed either that Earth executed an adequate security agreement with Second Avenue or that Second Avenue provided value for that agreement.

buyer pursuant to a contract with two key terms: (i) the sale was conditioned upon an "FDA release" of the goods, and (ii) payment was to be made within 30 days of the release. *Id.* at 48–49. The buyer also had a secured lender, who held a perfected security interest in all of the buyer's property, including after-acquired property. *Id.* at 49. The secured lender seized the goods before the FDA release issued and before any payment was made. *Id.* at 49–50. The seller's assignee sued the lender, contending that its interest was superior to the lender's, because the buyer had no power to pledge goods for which it had not paid. *Id.*

The SJC concluded that the buyer had sufficient "rights in the collateral" for the lender's security interest to attach, even though the FDA release had not occurred and no payment had been made. *Id.* at 51–52. "[W]here a debtor gains possession of collateral pursuant to an agreement endowing him with *any* interest other than naked possession, the debtor has acquired such rights as would allow [a] security interest to attach." *Id.* at 50 (quoting *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210, 214 (Okla. 1977)). The SJC therefore held that the secured creditor had priority over the unpaid seller's assignee. *Id.* at 50–53 (citing *Samuels*, 526 F.2d at 1249). It observed that any other result would effectively permit "the sort of hidden-title subterfuge the Code was intended to prevent." *See id.* at 52–53 (internal quotations omitted).

*Gloucester* compels the same result here. Earth's contracts with Novi gave it an interest "other than naked possession." For example, it is undisputed that Earth had the right to sell the goods to third parties. *See* SUF ¶ 18. Indeed, courts applying Massachusetts law have repeatedly concluded that buyers with a similar or even weaker interest in the relevant goods still possessed sufficient rights for a security interest to attach. *See Nat'l Cash Register Co. v. Firestone & Co.*, 346 Mass. 255, 258 (1963) (holding that secured creditor had priority over unpaid seller of cash register who sold the cash register conditionally, and with a purported reservation of title); *Unibank*

*for Sav. v. 999 Private Jet, LLC*, 31 F.4th 1, 7 (1st Cir. 2022) (holding under Massachusetts law that a secured creditor's interest attached even where intermediary "procured its interest by fraud"). Courts applying the UCC under the law of other states have reached the same conclusion. *See, e.g.*, *In re Aleris*, 456 B.R. at 44 ("The caselaw establishes the proposition that once a debtor acquires possession of an item of collateral pursuant to a sales contract or like agreement, the debtor has acquired sufficient 'rights' for Article IX purposes." (internal quotations omitted)).

Earth's alleged failure to fully pay for the goods is thus irrelevant to evaluating Second Avenue's security interest. Because Earth had sufficient "rights in the collateral" -- *i.e.*, a right "other than naked possession" -- Second Avenue's security interest attached under Massachusetts law. *Gloucester Corp.*, 419 Mass. at 50–51.

B.     Novi's Rights As A Reclaiming Seller Are Inferior To Second Avenue's Rights As A Secured Creditor.

So far as Second Avenue can tell, Novi contends that it (i) is an unsecured creditor of Earth, and (ii) has a right to reclaim Earth's goods. Otherwise, Novi would not have admitted that it "chose not to" create "a security interest" in Earth's goods (Bruno Decl., Ex. 9 at 7), and it would not have attempted to "exercis[e] its option to purchase goods sold by NOVI to EARTH and *still owned by EARTH*," SUF ¶ 26 (emphasis added). This case thus pits an unpaid, unsecured, reclaiming seller (Novi) against a secured creditor (Second Avenue).

The text of the UCC, the statements of the SJC, and the decisions of other courts applying Massachusetts law resolve that dispute in favor of the secured creditor. The UCC provides that, under certain circumstances, an unpaid seller may reclaim goods from its buyer. Mass. Gen. Laws c. 106, §§ 2-702(2), 2-507(2). A seller may not exercise its right to reclaim goods, however, if the buyer possesses the goods and a secured creditor has already perfected its interest in them. *See E.A. Miller*, 405 Mass. at 99 n.6; *Samuels*, 526 F.2d at 1244–45.

A seller's reclamation right is "subject to the right of . . . [a] good faith purchaser" under section 2-403.  Mass. Gen. Laws c. 106, § 2-702(3); *see also id.* § 2-507 cmt. 3 ("If third parties are involved, Section 2-403(1) protects good faith purchasers.").[5]  A purchaser is a "person that takes by purchase," *id.* § 1-201(b)(30), and a purchase includes the taking of a "security interest," *id.* § 1-201(b)(29).  Accordingly, the SJC has accepted a seller's concession that the rights of a "holder of a perfected security interest are superior to those of the plaintiffs, as unpaid reclaiming sellers."  *E.A. Miller*, 405 Mass. at 99 n.6.

It is undisputed that Second Avenue perfected its security interest in July 2021.  *See* SUF ¶¶ 7–8.  Novi attempted to reclaim the goods from Earth's possession on July 29, 2022.  *See id*. ¶ 26.  Novi is thus attempting to reclaim goods from a buyer's possession after a secured creditor perfected its interest in the goods.  *E.A. Miller* and the Code sections described above forbid Novi from doing so.

Although the seller conceded this point in *E.A. Miller*, the SJC also cited *Samuels* approvingly for the same proposition, and there is no reason to doubt that the SJC would follow *Samuels* on this point if given the opportunity to do so.  *See* 405 Mass. at 99 n.6.  *E.A. Miller* aside, courts applying Massachusetts law, including the SJC, have repeatedly followed *Samuels* when considering related issues.  *See Gloucester Corp.*, 419 Mass. at 51 (1994); *Szabo v. Vinton Motors, Inc.*, 630 F.2d 1, 3–4 (1st Cir. 1980); *see also In re Daley, Inc.*, 17 U.C.C. Rep. Serv. 433, 433–435 (Bankr. D. Mass. 1975) (holding that secured bank had priority over reclaiming unpaid seller); *In re Hayward Woolen Co.*, 3 U.C.C. Rep. Serv. 1107, 1108, 1111–12 (Bankr. D. Mass. 1967), attached as <u>Ex. 15</u> to the Bruno Decl. (holding that "a secured party holding a perfected security

---

[5]     *Pride*, 369 F.3d at 614 (explaining that in Massachusetts, the UCC's official comments are not binding, but are "highly persuasive authority.").

interest in a debtor's after-acquired property [was] entitled to prevail over a subsequent seller of goods to such debtor who asserts a right of rescission and reclamation based on the debtor's insolvency" because the secured party was a good faith purchaser); 1A Secured Transactions Under the Uniform Commercial Code § 7D.07 (Matthew Bender) ("[T]he courts have uniformly read provisions in Articles 1, 2 and 9 as meshing together to make it easy for the buyer's floating lienor to qualify as [a good faith] purchaser.");[6] *In re Steel Stadiums*, 2013 Bankr. LEXIS 148, at *15–16 (Bankr. N.D. Tex. Jan. 14, 2013) (applying Texas law and collecting cases from various jurisdictions holding that a "properly-perfected security interest generally trumps other types of equitable remedies similar to rescission, including reclamation").

Second Avenue's perfected security interest is thus superior to any right of reclamation that Novi might otherwise have against Earth.

C.  Even If Novi Is A Consignor, Its Unperfected Security Interest Is Inferior To Second Avenue's Perfected Security Interest.

Novi has suggested in passing that it is a consignor of the goods, and that Earth is its consignee. *See* Bruno Decl., Ex. 2 at ECF Page No. 20 (describing Earth as a "consignee") (Seng Decl.) (Dkt. No. 8). Novi has not, however, subsequently developed any argument (i) to establish that it is, in fact, a consignor, or (ii) premised upon its alleged rights as a consignor. Assuming for the sake of analysis that Novi is a consignor, any rights it has are still inferior to Second Avenue's.

A consignor has the ability to obtain a purchase-money security interest in inventory. *See* Mass. Gen. Laws c. 106, § 9-103(d) ("The security interest of a consignor in goods that are the subject of a consignment is a purchase-money security interest in inventory"). Like any other holder of a purchase-money security interest in inventory, however, a consignor must take certain

---

[6]    A security interest in all assets of a debtor, including after-acquired property, is described in the commercial lending industry as a "floating lien."

steps for its interest to take priority.  To obtain priority in inventory, a consignor must do two things before the consignee obtains possession of the goods: (i) perfect its interest, which would be accomplished by filing a UCC-1 Financing Statement; and (ii) provide notice to all of the consignee's perfected creditors.  *See id.* § 9-324(b)–(c).  If a consignor fails to take either of those steps, then its interest will be inferior to the interests of the consignee's secured creditors.  *See id.* §§ 9-319(a) ("[F]or purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer."), 9-322(a)(2) ("A perfected security interest . . . has priority over a conflicting unperfected security interest . . . ."); *In re TSAWD Holdings, Inc.*, 601 B.R. 599, 608 (Bankr. D. Del. 2019) (holding that secured creditor had priority over consignor who failed to properly obtain a purchase-money security interest).[7]

The UCC's official commentary expressly addresses what happens when a consignor fails to perfect its interest:

> Example 1: SP-1 delivers goods to Debtor in a transaction constituting a "consignment" as defined in Section 9-102.  SP-1 does not file a financing statement.  Debtor then grants a security interest in the goods to SP-2.  SP-2 files a proper financing statement.  Assuming Debtor is a mere bailee, as in a "true" consignment, Debtor would not have any rights in the collateral (beyond those of a bailee) so as to permit SP-2's security interest to attach to any greater rights.  Nevertheless, under this section, for purposes of determining the rights of Debtor's creditors, Debtor is deemed to acquire SP-1's rights.  Accordingly, SP-2's security interest attaches, is perfected by filing, and, under Section 9-322, is

---

[7] *See also Rayfield Inv. Co. v. Kreps*, 35 So. 3d 63, 66–67 (Fla. Dist. Ct. App. 2010) (providing that secured creditor had priority over unperfected consignor and noting that "[t]he rules for acquiring and enforcing security interests were not written to permit individualized justice and equity contrary to their requirements"); *In re State St. Auto Sales, Inc.*, 81 B.R. 215, 218–20 (Bankr. D. Mass. 1988) (holding that secured creditor of consignee had priority over unpaid consignor of cars under older UCC provisions); *Plumb v. Casey*, 469 Mass. 593, 600 n.13 (2014) ("Under the UCC, if a UCC financing statement is not filed upon consignment, then a consignor retains only an unsecured interest in the consigned item.").

senior to SP-1's interest.

Mass. Gen. Laws c. 106, § 9-319, cmt. 2.  As the example illustrates, the consignor's unperfected interest is inferior even when compared to a secured creditor that acquires its interest after the goods have been delivered.  *See id.*

Here, it is undisputed that Novi never recorded any interest in Earth's goods, and never provided notice of any alleged consignment to Second Avenue prior to delivery of the goods to Earth.  *See* SUF ¶¶ 28–30.  Second Avenue's perfected security interest is therefore superior to any alleged, unperfected consignment-interest Novi may claim to hold.  *See* Mass. Gen. Laws c. 106, § 9-322(a)(1)–(2).

D.    Novi Could Have Protected Itself -- Both Legally And Practically -- But Did Not.

Courts sometimes observe that the law's preference for secured creditors rather than unpaid sellers may "appear harsh."  *See, e.g.*, *In re Piknik Prods. Co.*, 346 B.R. 863, 868 (Bankr. M.D. Ala. 2006); *Szabo*, 630 F.2d at 4 (observing under an older UCC provision that "the rule we embrace today may work a hardship on the cash seller since he may lose his right to reclaim").  For two reasons, any alleged unfairness here is "illusory."  *Samuels*, 526 F.2d at 1247.

First, as *Samuels* and the SJC have both explained, it is easy for sellers to protect their interests under the UCC.  "The seller at most need only (1) file a financing statement and (2) notify the prior secured party of its interest before delivery of the new inventory."  *Id.* at 1248.  By taking those straightforward steps, a seller can "completely protect[] itself" from the interests of senior secured creditors.  *Nat'l Cash Register Co. v. Firestone & Co.*, 346 Mass. 255, 258 (1963); *see Kreps*, 35 So. 3d at 67 (explaining that the steps a consignor must take to protect its interests under the UCC are "simple, not burdensome, and easily satisfied.").  A seller who fails to take those steps "takes a calculated risk that a loss will result."  *Samuels*, 526 F.2d at 1248.

Second, as a practical matter, Novi is a highly sophisticated party who had ample

opportunities to protect its interests.  Novi is a member of the Wortmann group, which is "one of the largest shoe production and distribution companies in Europe."  SUF ¶ 15.  The record confirms that Novi knew how to protect itself.  In 2020, Novi required Earth to post a $5.5 million letter of credit in connection with its shipments of goods to Earth.  *Id.* ¶ 20.  By January 2022, Novi had drawn down the entire line, and was still owed at least $4.9 million by Earth.  *Id.* ¶ 21.  At that time, Second Avenue's security interest had been a matter of public record for six months.  *See id.* ¶¶ 7–8.  Novi could have required Earth to post another letter of credit before shipping additional goods.  It could have required Earth to pay up front or demanded "payment by certified check." *Szabo*, 630 F.2d at 4.  Or Novi could have simply followed the steps prescribed by the UCC for perfecting a security interest in the goods.  *See Samuels*, 526 F.2d at 1247–48; *Kreps*, 35 So. 3d at 67.

It is undisputed that Novi chose to do none of those things.  As a result of that decision, Novi "finds itself in the same unfortunate position as the unpaid seller in *Samuels*."  *In re Wild W. World, L.L.C.*, 2008 Bankr. LEXIS 3580, at *16 (Bankr. D. Kan. Oct. 17, 2008).  While the reasons for Novi's choice may be unclear, the consequences are straightforward: under Massachusetts law, Novi's rights as an unpaid seller are inferior to Second Avenue's rights as a secured creditor.

Second Avenue therefore respectfully submits that its motion for summary judgment should be granted, and this Court should declare that: (1) Second Avenue's interest in the goods delivered to Earth is superior to any interest claimed by Novi; and (2) Second Avenue is entitled to the goods or the proceeds of the sale of the goods.

## V.    CONCLUSION

For the foregoing reasons, Second Avenue's motion for summary judgment should be granted.

Respectfully submitted,

SECOND AVENUE CAPITAL PARTNERS
LLC

By its attorneys,


*/s/ Jean-Paul Jaillet*
Jean-Paul Jaillet (BBO#: 647299)
Samuel N. Rudman (BBO#: 698018)
John C. Calhoun (BBO#: 694479)
Preston F. Bruno (BBO#: 699335)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
jjaillet@choate.com
srudman@choate.com
jcalhoun@choate.com
pbruno@choate.com

Dated:  September 9, 2022


## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on September 9, 2022

and will be sent electronically to the registered participants as identified on the Notice of Electronic

Filing.

*/s/ Jean-Paul Jaillet*
Jean-Paul Jaillet (BBO#: 647299)

21