| | |
|---|---|
| NOVI FOOTWEAR INTERNATIONAL CO. LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC and WILLIAM SWEEDLER,<br><br>Defendants,<br><br>SECOND AVENUE CAPITAL PARTNERS, LLC,<br><br>Intervenor Defendant. | **Civil Action No.: 1:22-cv-10952-RGS** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO INTERVENOR DEFENDANT'S PRE-DISCOVERY MOTION FOR SUMMARY JUDGMENT**

Plaintiff Novi Footwear International Co. Limited ("Novi") submits this memorandum of law in opposition to Intervenor Defendant Second Avenue Capital Partners, LLC's ("Second Avenue") pre-discovery motion pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for summary judgment on Second Avenue's claim for a declaration: (i) that Second Avenue's interest in goods manufactured by Novi and delivered to Defendants Earth OpCo LLC ("Earth"), Windsong Capital Management LLC and William Sweedler (collectively, "Defendants") is superior to Novi's interest in the goods; and (ii) Second Avenue is entitled to the goods or proceeds of the sale of the goods.

## PRELIMINARY STATEMENT

Despite Second Avenue's best efforts to portray this dispute as a "recurring one" frequently encountered by the courts, this is not a simple or straightforward fact pattern and there are a host of disputed material issues of fact that cannot be resolved on this pre-discovery motion for summary judgment. As set forth in greater detail below, there is a sharp factual disagreement among the parties over whether: (i) Novi's relationship to Defendants is akin to a consignor-consignee relationship; and if so, whether Second Avenue's actual knowledge of Novi's interest in the goods it manufactured and delivered to Defendants (the "Goods") subordinates Second Avenue's alleged secured interest to Novi's unperfected secured interest; (ii) in the alternative, Second Avenue's alleged secured interest is even enforceable in light of Defendants' mere possessory rights to the Goods under their written agreements with Novi; and (iii) in the alternative, Defendants' representation to Novi in the February 13, 2022 Letter Agreement that Novi's rights to the Goods do not conflict with Defendants' agreements with Second Avenue, and Second Avenue's knowledge of and acquiescence to this representation constitutes bad faith sufficient to negate Second Avenue's priority.

## BACKGROUND

Novi's interest in the Goods long pre-dates Second Avenue's claimed interest. Novi began sourcing Goods for Earth in or around June 2020 after Earth closed its sourcing office in Asia (Declaration of Tobias Seng, dated June 16, 2022 (the "Seng Decl."), Dkt. No. 90-2, ¶ 7). At the time, the parties entered into a Product Exclusivity Agreement pursuant to which the payment terms for each purchase order were paid by a standby letter of credit or 30% prepayment at order placement paid in cash and the remaining 70% paid at shipment (Seng Decl., Dkt. No. 90-2, ¶¶ 7-8, Ex. A). Thereafter, the parties agreed to modify the payment terms; beginning in or around

September 2020, Earth secured its purchases from Novi with a standby letter of credit in the amount of $1.5 million, which increased to $4 million as of November 16, 2020 and $5.5 million as of November 20, 2020 (Seng Decl., Dkt. No. 90-2, ¶ 9). In a November 1, 2020 Letter Agreement—prior to Second Avenue's claimed security interest by approximately eight months— Earth agreed that "[t]itle to the goods shall not pass to [Earth] until Novi receives payment in full for the goods" (Seng Decl., Dkt. No. 90-2, Ex. B). Earth further agreed in the November 1, 2020 Letter Agreement that "Novi is allowed to resell the retention of title Goods and all other unshipped Goods at any time to any third party in any country" (Seng Decl., Dkt. No. 90-2, Ex. B).

Earth went through a corporate restructuring in 2021 when it was purchased by a private equity firm, Windsong Global, that is owned and/or controlled by Sweedler, its Chairman and Chief Executive Officer, who also is the Chairman and Chief Executive Officer of Earth and Windsong Capital (Seng Decl., Dkt. No. 90, ¶ 12). At or around the same time that Windsong Global acquired Earth, Earth entered into a Credit Agreement and Security Agreement with Second Avenue (Declaration of Mark E. Gallivan, dated September 9, 2022 (the "Galvin Decl."), Dkt. No. 89-1 and 2). In the Security Agreement, Earth granted Second Avenue "a lien on and security interest in and to all of the right, title and interest of such Grantor in, to and under all personal property and interests in such personal property, except for assets that qualify as "Excluded Property" (Galvin Decl., Dkt. No. 89-2, § 2.1). The definition of Excluded Property in the Security Agreement is:

> any contract … any asset embodying rights, priorities or privileges granted under such contracts … in each case which by its terms validly prohibits a pledge or transfer by [Earth], or to the extent that granting a security interest therein would violate, invalidate or result in a breach or default under such contract …or create a right of acceleration, modification, termination, or cancellation of in favor of any party thereto … so long as such contract … was not entered into as a contemplation of circumventing [Earth's] obligation to grant a security interest therein

(Galvin Decl., Dkt. No. 89-2, p. 3). Given the significant financial disclosure and audit requirements under Article IV of the Credit Agreement for Earth to obtain initial financing from Second Avenue, Second Avenue had actual knowledge of Earth's indebtedness to Novi and Novi's rights to the Goods under the November 1, 2020 Letter Agreement when Second Avenue entered into the Credit and Security Agreements (Galvin Decl., Dkt. No. 89-1, §§ 4.01(a)(i)-(xx); 4.01(e)).

At or around the same time that Windsong Global acquired Earth and Earth entered into the Security and Credit Agreements with Second Avenue (the "Credit Agreement"), Earth suddenly took an entirely different approach towards settling its debts with Novi (Seng Decl., Dkt. No. 90-2, ¶¶ 13-16). In November 2021, Earth—controlled by Windsong—suddenly announced that payments would no longer be made in full and requested a deferral of payments going forward, promising only partial payments towards outstanding invoices (Seng Decl., Dkt. No. 90-2, ¶ 16). In order to induce Novi to continue to fulfill its orders, Defendants entered into a series of written agreements—first, a December 21, 2021 letter agreement authorizing Novi to sell the Goods (Seng Decl., Dkt. No. 90-2, Ex. C). After Defendants failed to make payments to Novi following the December 21, 2021 letter agreement, Novi stopped all pending shipments and would not agree to fulfill future orders unless Earth entered into a meaningful payment plan (Seng Decl., Dkt. No. 90-2, ¶ 18).

In a letter agreement dated February 13, 2022 (the "February 13, 2022 Letter Agreement"), Defendants re-confirmed Novi's interest in the Goods. Among other things, Defendants agreed that:

> For clarification: In case EARTH is defaulting in any of its payment or not paying any invoice until the due date, **NOVI remains the unrestricted owner of the GOODS and is entitled to transfer title of the GOODS anytime to any person at its wish and is further entitled to sell to any person without any restriction or limitation anytime**

(Seng Decl., Dkt. No. 90-2, Ex. D, p. 2) (emphasis added). The February 13, 2022 Letter Agreement also gave Novi the option to re-possess and sell the unpaid Goods (Seng Decl., Dkt. No. 90-2, Ex. D, p. 2). Defendants also represented in the February 13, 2022 Letter Agreement that Novi's rights to the Goods were consistent with any agreement between Defendants and their "financing partner/bank/factoring" (Seng Decl., Dkt. No. 90-2, Ex. D, p. 3). Based on Defendants recognition of Novi's interest in the Goods and representation that this interest would not conflict with any agreement between Defendants and its lenders, Novi resumed fulfilling Earth's purchase orders (Seng Decl., Dkt. No. 90-2, ¶ 22).

Second Avenue had actual knowledge that Defendants entered into the February 13, 2022 Letter Agreement and of Novi's superior interest in the Goods. Kevin Haney of Windsong Global assured Novi during the negotiations of the February 13, 2022 Letter Agreement that Defendants' lenders were informed about terms of the February 13, 2022 Letter Agreement and had agreed to it (Declaration of Ulrich Klueber, dated September 23, 2022 (the "Klueber Decl."), ¶ 5). Defendants' lender's actual knowledge of Novi's interest in the Goods was a material component of the February 13, 2022 Letter Agreement; during the negotiations, Novi insisted that Defendants get confirmation from their lender and that representation be made part of the February 13, 2022 Letter Agreement, which it was (Klueber Decl., ¶ 5; Seng Decl., Dkt. No. 90-2, Ex. D, p. 3).

Earth's former Chief Operating Officer has averred that the unpaid Goods were not part of Earth's inventory eligible for sale pursuant to the February 13, 2022 Letter Agreement and that Second Avenue would have actual knowledge of this based on Earth's delivery of monthly financial records showing outstanding liabilities, as well as Borrowing Base Certificates showing inventory eligible as security for borrowing under the Credit Agreement (Declaration of Alain Gervais, dated September 23, 2022 (the "Gervais Decl.", ¶¶ 4-5, 9). The Borrowing Base

Certificates are used by Second Avenue to calculate the amount that Second Avenue would loan to Earth (Gervais Decl., ¶¶4-6, 9).

Despite its actual knowledge of Novi's interest in the Goods and Defendants' indebtedness to Novi, Second Avenue continued to loan repayments from Earth for sales of Goods (Galvin Decl., Dkt. No. 89, ¶¶ 4, 9, 10). Moreover, Second Avenue has never declared Earth to be in default under the Credit Agreement, except under a notice of default, dated January 24, 2022 (Galvin Decl., Dkt. No. 89-4). Under this notice, Second Avenue claims that Earth is in default because it did not "comply with the minimum Consolidated EBITDA covenant" required under the Credit Agreement "with respect to the Measurement Period ending on November 30, 2021" (Galvin Decl., Dkt. No. 89-4). On August 15, 2022, Second Avenue claims to have accelerated the indebtedness due to it under the Credit Agreement based on the default set forth in the January 24, 2022 notice (Galvin Decl., Dkt. No. 89-5). Second Avenue has never declared Earth to be in default under the Credit Agreement for failure to pay (Galvin Decl., Dkt. No. 89-4 and 89-5). Second Avenue has never declared Earth to be in default under the Credit Agreement because the Goods are Excluded Property under the Security Agreement (Galvin Decl., Dkt. No. 894 and 89-5).

Novi was constrained to bring this action on June 17, 2022 because Defendants failed to satisfy their obligations under the February 13, 2022 Letter Agreement, including return the Goods to Novi for sale (Seng Decl., Dkt. No. 90-2, ¶¶23-27). After discovering that Defendants were liquidating the Goods at outrageously discounted prices of up to 70% in order to deplete Earth's remaining assets, Novi moved for a temporary restraining order, which was granted by this Court on July 14, 2022 (Dkt. No. 22). The Court subsequently granted Novi's motion for preliminary injunction on July 21, 2022 after full briefing and oral argument, finding, among other things, that

"Novi, for all practical purposes, possesses a security interest (or its equivalent) in the disputed footwear" (Dkt. No. 40 at 7) and that Novi's right to repossess and resell the Goods was a "right of replevin" "plainly intended to secure the payments Earth owed by using the footwear as collateral" (Dkt. No. 40 at 8). Accordingly, the Court restrained Earth from "disposing of goods manufactured by Novi" and stated that "Novi must elect within thirty days whether to assert its right to repurchase the products" (Dkt. No. 40 at 11 and 12). Novi exercised that right on July 29, 2022 in accordance with the Court's directive (Dkt. No. 90-6).

## ARGUMENT

### I. STANDARD OF REVIEW

Under Fed. R. Civ. P. Rule 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party ... [and] [a] fact is material if it has the potential of determining the outcome of the litigation." *Baker v. St. Paul Travelers, Inc.*, 670 F.3d 119, 125 (1st Cir. 2012) (internal citation omitted). When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court properly "give[s] no heed to speculative, unsupported, or unreasonable conclusions." *Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d 61, 69 (1st Cir. 2014). The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts

showing there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 256 (1986).

Generally, a motion for summary judgment is brought **_after_** the parties have completed discovery. *See Celotex Corp.*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (emphasis added). When an inadequate opportunity for discovery prevents the nonmovant from mounting an opposition, Rule 56(d) of the Fed. R. Civ. P. offers a "safeguard against judges swinging the summary judgment axe too hastily." *Resolution Trust Corp. v. N. Bridge Assocs., Inc.,* 22 F.3d 1198, 1203 (1st Cir. 1994). Specifically, summary judgment should be denied if "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. Rule 56(d). Because district courts "construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter," the First Circuit requires substantial, not perfect, compliance. *Resolution Trust Corp*., 22 F.3d at 1203.

Second Avenue's pre-discovery motion for summary judgment should be denied based on these principles. As set forth in greater detail herein, there are significant factual disputes regarding: (i) Novi's relationship to Defendants is akin to a consignor-consignee relationship; and if so, whether Second Avenue's actual knowledge of Novi's interest in the goods it manufactured and delivered to Defendants (the "Goods") subordinates Second Avenue's alleged secured interest to Novi's unperfected secured interest; (ii) in the alternative, Second Avenue's alleged secured interest is not even enforceable in light of Defendants' mere possessory rights to the Goods under

their written agreements with Novi; and (iii) in the alternative, Defendants' representation to Novi in the February 13, 2022 Letter Agreement that Novi's rights to the Goods do not conflict with Defendants' agreements with Second Avenue, and Second Avenue's knowledge of and acquiescence to this representation constitutes bad faith sufficient to negate Second Avenue's alleged priority. These matters should be heard by the trier-of-fact after discovery.

## II. THERE IS A GENUINE FACTUAL DISPUTE REGARDING WHETHER NOVI AND DEFENDANTS' RELATIONSHIP IS AKIN TO A CONSIGNMENT AND IF SO WHETHER SECOND AVENUE'S ACTUAL KNOWLEDGE OF THAT RELATIONSHIP SUBORDINATES SECOND AVENUE'S INTEREST

There is a genuine factual dispute concerning whether Novi and Defendants' relationship is akin to a consignment and if so whether Second Avenue's actual knowledge of that relationship subordinates its interest. Pursuant to Mass. Gen. Laws c. 106, § 9-102(20), a consignment is defined as a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A) The merchant: (i) deals in goods of that kind under a name other than the name of the person making delivery; (ii) is not an auctioneer; and (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) With respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(C) The goods are not consumer goods immediately before delivery; and

(D) The transaction does not create a security interest that secures an obligation.

Whether the transaction constitutes a true assignment or a secured transaction depends on the intent of the parties at the time of contract formation. *In re Oriental Rug Warehouse Club, Inc.*, 205 B.R. 407, 410 (Bankr. D. Minn. 1997) (citing *In re Ide Jewelry Co. Inc.*, 75 B.R. 969, 977 (Bankr. S.D.N.Y. 1987).

There are sufficient facts that could lead the trier-of-fact to conclude that Novi and Defendants' relationship qualifies as a consignment. Novi delivered the Goods to Defendants for the purpose of sale and Earth qualifies as a merchant under Mass. Gen. Laws c. 106, § 2-104(1)[1] and is not an auctioneer. Defendants are not generally known by their creditors to be substantially engaged in selling the goods of others. The aggregate value of Novi's deliveries is $1,000 or more. The Goods were "inventory" immediately before delivery to Defendants under Mass Gen. Laws c. 106, 9-102(48) and not consumer goods.[2] And a trier-of-fact may conclude that the February 13, 2022 Letter Agreement is a consignment that does not secure an obligation, e.g., Defendants had a duty of sale or return of the Goods, but no duty to pay for unsold Goods that are ultimately retuned to Novi. *See* 4 White, Summers, & Hillman, Uniform Commercial Code § 30:17 (6th ed. 2012). This Court recognized that Novi and Defendants relationship may qualify as a consignment during oral argument on Second Avenue's motion, in effect, to dissolve the preliminary injunction:

> THE COURT: So why don't I begin with Second Avenue. I want to understand the basis for the – I understand the UCC. It's not foreign to me. But I want to understand how you can have a security interest in goods that belong to a third party even though they may be in temporary possession of the consignee …

(Dkt. No. 90-13; 5:2-7.) The Court continued:

---

[1] Mass. Gen. Laws c. 106, § 2-104(1) defines merchant as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

[2] "Inventory" is defined in Section 9-102(48) as "goods ..., which (B) are held by a person for sale." The Uniform Commercial Code Comments to Section 9-102(48) make clear that there are "four mutually-exclusive 'types' of collateral that consist of goods: 'consumer goods,' equipment,' 'farm products,' and inventory … the classes of goods are mutually exclusive … Goods can fall into different classes at different times. For example, a radio may be inventory in the hands of a dealer and consumer goods in the hands of a consumer." Here, immediately prior to delivery to Defendants, the Goods were inventory rather than consumer goods.

THE COURT:      Let me say this.  As I read the – my position is, at least my assumption is, that the February 13 letter agreement is the contract.  The fourth paragraph of that agreement specifically says that, "In the event of a default, Novi reserves the right to transfer the title of the Goods."  How can you read that as anything other than a reservation of title to the consignor?  I fully agree with you that ordinarily under UCC law a consignee who does not reserve the right to title allows title to pass to the – I'm sorry. The consignor does not reserve the right.  The right to title then passes to the consignee.  I do not see that happening here under this contract as it is written.  So I would agree you have a security interest in any footwear that is in the possession of Earth that has actually been paid for.  But I don't see how you can take a security interest in what in effect are stolen goods.

(Dkt. No. 90-13; 10:14-25 – 11:1-7.)

Clearly, there is an issue of fact as to whether Novi is a consignee.  And under Section 9-102(a)(20), a consignment is not subject to the priorities of the UCC if a consignor can show that the consignee's creditors, here Second Avenue, generally knew that it [consignee] was substantially engaged in selling consigned goods. *See In re Valley Media, Inc.*, 279 B.R. 105, 123-24 (Bankr. D. Del. 2002). If that is the case, then the consignee's creditors cannot obtain a lien or other interest in the consigned goods.  *Id.*  Indeed, many courts have followed this principle that Article 9 priority rules will not apply if the secured creditor had actual knowledge that goods were held on consignment when its security interest was granted. *See, e.g., GBS Meat Ind. Pty. Ltd. v. Kress-Dobkin Co., Inc.*, 474 F.Supp. 1357, (W.D. Pa. 1979), *aff'd without opinion at* 622 F.2d 578 (3d Cir. 1980) (concluding that there is an "actual knowledge" exception to § 9-102); *In re Key Book Serv., In*c., 103 B.R. 39, 43 (Bankr. D. Conn. 1989) (finding that the UCC did not give a bank priority in books owned by publishers and held by the debtor where the bank had received actual knowledge of the publishers' interest while negotiating its loan with the debtor); *Fariba v. Dealer Servs. Corp.*, 178 Cal. App. 4th 156, 169 (Cal. Ct. App. 2010) (concluding that actual knowledge of a consignment lien is an exception to the priority provisions of the UCC); *Eurpac Serv., Inc. v. Republic Acceptance Corp.*, 37 P.3d 447, 451 (Colo. App. 2000) (holding that a creditor who has actual knowledge of a debtor selling goods belonging to others satisfies the

"generally known" and "substantial engagement" exception in UCC § 9-102(a)(20)); *Belmont Int'l, Inc. v. Am. Int'l Shoe Co.,* 313 Or. 112 (1992) (agreeing with courts who hold that a creditor's actual knowledge of a consignment relationship is sufficient to remove the consignment from the requirements of the UCC).

The reasoning of those courts is that the UCC policy of protecting creditors from the "secret lien" of a consignor is not implicated if the creditor in question has actual knowledge of the consignor's lien. The courts note that if a creditor's constructive knowledge of a consignment lien (from the filing of a UCC financing statement or from the fact that other creditors generally know the debtor is selling consigned goods) is sufficient to give the consignor priority, it would be absurd to conclude that actual knowledge of the consignment is not sufficient. *See, e.g., Fariba*, 178 Cal. App. 4th at 169 (opining that "construing the knowledge exception to include constructive knowledge, but not actual knowledge, would lead to absurd results ... [such as] giving greater weight to imputed knowledge than actual knowledge"); *Eurpac*, 37 P.3d at 451 ("It would be absurd to hold a creditor responsible for imputed knowledge but not hold the same creditor responsible for actual knowledge.").[3]

---

[3] Those courts also conclude that allowing an "actual knowledge" exception does not offend the underlying UCC policy of protecting creditors from secret liens. *See, e.g., Fariba*, 178 Cal. App. 4th at 167 ("since the purpose of the notice exception is to 'protect creditors from the "hidden" claim of the consignor, it should follow that a creditor of a consignee who has *actual knowledge* that the consignee is a consignee cannot claim the protection thereof.' ") (emphasis added); *GBS Meat,* 474 F.Supp. at 1363 ("The clear import of the comments to [the predecessor to § 9-102(a)(20) ], and the judicial precedents discussed above establish that, where a secured creditor knows that the proceeds rightfully belong to a consignor, the consignor must have priority. Any other construction ... would contravene the intent of that section and would sanction intentional conversions of goods or proceeds."); *In re High-Line Aviation, Inc*., 149 B.R. 730, 737 (Bankr. N.D. Ga. 1992) (adopting the reasoning of *GBS* and concluding that "if a creditor knows that goods in a debtor's place of business are on consignment, the creditor is not misled by the presence of consigned goods and its lien should not extend to them"); *Key Book*, 103 B.R. at 43 (concluding that the purpose of the UCC is "to prevent creditors from being misled by a hidden lien" and so it should be limited to "instances where creditors of a consignee may have been misled by a secret lien") (citations omitted); *Belmont*, 831 P.2d at 19 (noting that the purpose of the UCC

There is a disputed issue of fact whether Second Avenue had actual knowledge of Novi's rights—and if it did, than Second Avenue's interest would not take priority over Novi's interest in the Goods. As the Bankruptcy Court stated in *In re TSAWD Holdings, Inc.*, 595 B.R. 676, 683 (Bankr. D. Del. 2018):

> The Court agrees with the analysis of those cases which conclude that actual knowledge of a consignor's interest will preclude a creditor from arguing that the consignor's interests are inferior to its interests. It truly would be absurd to bind a secured creditor to the constructive notice of a consignor's interest arising from a UCC-1 filing or from the fact that the debtor is "generally known" to be selling consigned goods but not bind a creditor who has actual knowledge of the consignor's interest in the goods when lending to the debtor

This Court should follow this reasoning—at least at this pre-discovery stage—and rule that genuine issues of material fact exist as to whether Novi is a consignor and whether Second Avenue had actual knowledge of Novi and Defendants' relationship such that Second Avenue's interest would not take priority over Novi's interest in the Goods. Information regarding Second Avenue's actual knowledge is squarely within its and Defendants' possession and control. Under Rule 56(d), this pre-discovery motion should be denied to afford Novi an opportunity to engage in discovery and obtain information regarding Second Avenue's actual knowledge. Novi is in a position to obtain this information in a timely manner through the normal discovery process and procedures of this Court.[4]

---

"is to protect the creditors of a consignee from the consignor's hidden liens on the consignment goods").

[4] Second Avenue's authority cited on pages 17-18 of its moving brief for the general proposition that a consignor's unperfected security interest is inferior to a perfected security interest is irrelevant because Second Avenue had actual knowledge of Novi's alleged unperfected security interest.

## III.  THERE IS A GENUINE DISPUTE REGARDING WHETHER SECOND AVENUE'S SECURITY INTEREST IS ENFORCEABLE

Whether Second Avenue's secured interest is even enforceable hinges on the nature of Novi's interest under the February 13, 2022 Letter Agreement and Novi's prior agreements with Earth.  Under Massachusetts law, a security interest is enforceable when: (a) "value has been given"; (b) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party"; and (c) one of four alternate conditions must be satisfied.  Mass. Gen. Laws C. 106, § 9-203(b).  The "rights in the collateral" requirement, while not defined in the UCC, illustrates the general principle that "one cannot encumber another[]'s property in the absence of consent, estoppel, or some other special rule."  *In re Pubs, Inc.*, 618 F.2d 432. 436 (7th Cir. 1980) ("the debtor may clearly have sufficient 'rights' for purposes of s 9-203 if the true owner of the collateral has agreed to the debtor's use of the collateral as security or if the true owner has become estopped to deny the creation or existence of the security interest").

In interpretating what constitutes "rights in the collateral," courts long have held that "possession of goods" is not sufficient to convey rights in the collateral.  *Trust Co. Bank v. Gloucester Corp.*, 419 Mass. 48, 51 (1994); *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 98 (1st Cir. 1993) ("Since mere possession of goods under a transaction of entrustment clothes a debtor with no rights in the collateral to which a security interest can attach … the Banks acquired no enforceable lien in the scallops by virtue of their security interests in Gloucester's after-acquired inventory"); *see also In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1103 (9th Cir. 1997) ("mere possession of a collateral by the debtor is not sufficient to constitute rights in the collateral") (internal quotations omitted).  Indeed, the comment 6 to UCC § 9-203(b) makes clear that "the baseline rule is that a security interest attaches only to whatever rights may have, broad or limited as those rights may be."

There are issues of fact regarding the nature of Novi, Defendants and Second Avenue's interests in the unpaid Goods:

- The February 13, 2022 Letter Agreement, and the Novi/Earth agreements pre-dating Second Avenue's interest, evinces an intent that Novi would retain all legal and equitable rights to the Goods while in Defendants' possession until paid (Seng Decl., Exs. A-D, Dkt. No. 90-2).

- The February 13, 2022 Letter Agreement states "NOVI remains the unrestricted owner of the GOODS and is entitled to transfer title of the GOODS anytime to any person at its wish and is further entitled to sell to any person without any restriction or limitation anytime" (Seng Decl., Ex. D, Dkt. No. 90-2).

- The February 13, 2022 Letter Agreement provides that Novi has the option of re-possessing and selling the Goods, a right that this Court recognized in the preliminary injunction order and that Novi in fact exercised on July 29, 2022 (Seng Decl., Ex. D, Dkt. No. 90-2; Dkt. No. 40).[5]

- Defendants represented to Novi in the February 13, 2022 Letter Agreement that Novi's ownership of the unpaid Goods and option to re-possess and sell is consistent with any agreement with Defendants' lenders, including Second Avenue (Seng Decl., Ex. D, Dkt. No. 90-2).

- Second Avenue had actual knowledge of Novi's interest in the Goods under the prior written agreements, Defendants unpaid debt to Novi and that unpaid Goods

---

[5]     Novi's contractual option to repossess and sell the Goods is not a contract for the sale of Goods governed by the UCC. *Stapleton v. Macchi*, 401 Mass. 725, 729, n. 6 (1988) ("An option is simply an irrevocable offer creating a power of acceptance in the optionee"); *see also I & R Mechanical, Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 457 (2004) (UCC inapplicable because option contract was not a firm offer).

were not eligible for sale as on consignment (*see generally* Klueber Decl.; Gervais Decl.).

- Second Avenue financially benefitted by Defendants' violation of Novi's rights to the Goods by accepting loan repayments from Defendants (*see generally* Klueber Decl.; Gervais Decl.).

- The unpaid Goods qualify as "Excluded Property" under Second Avenue's Security Agreement (Galvin Decl., Dkt. No. 89-2, p.3).

During the oral argument on Second Avenue's motion to dissolve the preliminary injunction, the Court recognized the significant factual dispute at issue here, stating:

> THE COURT:     But as I understand it, a security interest is in the assets of the party against which it lodges.  Let's go back to the contract.  Under the contract, Earth agreed that the title, that has superior interest in the property, remained with Novi until the goods were paid for.  So I can see why you would have a perfected interest superior to Novi's in any of the footwear that Earth in fact had paid for.  But the other footwear unpaid for in its possession is not an asset.  That's liability.  So how can you have a perfected interest in a liability?

(Dkt. No. 90-13; 8:22-25 – 9:1-6.)

To put it simply, there are significant issues of fact that require denial of Second Avenue's pre-discovery summary judgment motion.  *See*, *e.g.*, *Conway v. Licata*, 104 F. Supp. 3d 104 (D. Mass. 2015) ("[q]uestions of the parties' intent and the scope of any license involving the songs at issue requires resolving the issues of fact not amenable to summary judgment"); *Den Norske Bank AS v. First Nat. Bank of Boston*, 75 F.3d 49, 53 ("An argument between parties about the meaning of an ambiguous contract is typically an argument about a material fact and summary judgment is normally unwarranted") (internal quotations and punctuation omitted).[6]

---

[6]     Second Avenue's cited authority for the notion that a perfected secured lender has priority over an unpaid seller on pages 10-15 of its moving brief is misguided.  Contrary to this assertion the February 13, 2022 Letter Agreement makes clear that title at all times remained with Novi, and

## IV.   SECOND AVENUE'S BAD FAITH NEGATES SECOND AVENUE'S CLAIMED PRIORITY

There are genuine issues of fact regarding Second Avenue's bad faith that, if proven at trial, would negate Second Avenue's claimed priority.  Mass. Gen. Laws c. 106, § 2-702(2) states that:

> Where the seller discovers that the buyer has received goods on credit while insolvent, he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay

Mass. Gen. Laws c. 106, § 2-702(3) states that "[t]he seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article."  The requirement of a "good faith" "lien creditor" has led courts to conclude that a secured party may lose its priority to an unpaid seller if the secured party acts in bad faith.  In *Matter of Samuels*, 526 F.2d 1238 (5th Cir. 1976) (*en banc*), the Court implied that bad faith on the part of the secured party may subordinate its rights in the collateral, stating "[i]f the Article Nine secured party acted in good faith, it is prior … to an aggrieved seller."  *Id*. at 1243; *see also Thompson v. U.S.*, 408 F.2d 1075, 1084 (8th Cir. 1969) (the good faith provision in the UCC "permits the consideration of the lack of good faith by the debtor and secured party … to alter priorities which otherwise would be determined under Article 9").  The observation by the Fifth Circuit in *In re Samuels* "suggests that the interest of an Article Nine secured party who acted in bad faith might be subordinated to the interest of an unpaid seller." *Limor Diamonds, Inc. v. D'Oro by Christopher Michael, Inc.*, 558 F. Supp. 709, 711 (S.D.N.Y. 1983) (denying summary judgment

was never transferred to Defendants, and Defendants had no interest in the Goods to which Second Avenue's secured interest could attach.

because the "good or bad faith of the defendants in enforcing the security agreement with D'Oro is a material fact which is yet to be developed. We make no findings as to this issue, but merely hold that under Rule 56 the plaintiff has the right to attempt to prove its allegations"); *see also Graniteville Co. v. Bleckley Lumber Co.*, 687 F. Supp. 589, 591 (M.D. Ga. 1988) (denying secured creditor's motion for summary judgment because "absence of good faith in the conduct of a secured party is a consideration which, if sufficiently established by the evidence, may result in the reordering of the priorities among creditors").[7]

Second Avenue's acts of bad faith include: (a) it had actual knowledge of Novi's superior interest in the unpaid Goods and that such Goods were not eligible for resale by Earth; (b) it confirmed to Defendants that the February 13, 2022 Letter Agreement was consistent Second Avenue's Security Agreement; (c) Second Avenue has actual knowledge that the unpaid Goods are Excluded Property under the Security Agreement and that Second Avenue has no secured interest; (d) Second Avenue declared a default against Earth under the Credit Agreement solely to give itself standing in this action and create a justiciable controversy where none exists; (e) Second Avenue has not suffered any financial loss as a result of Earth's alleged default under the Credit Agreement; and (f) Second Avenue has financially benefitted by the violation of Novi's rights to the Goods. A trier of fact may conclude that these acts, if proven, are sufficient to negate Second Avenue's claimed priority. Given that there has been no discovery in this action and the depth of Second Avenue's knowledge of Novi's interests and acts of bad faith are solely within Second Avenue's control, Second Avenue's motion should be denied.

---

[7]  Second Avenue's cited authority in pages 15-17 of its moving brief for the general proposition that a reclaiming seller has inferior rights to a secured creditor is of no consequence to the facts and circumstances here because Second Avenue's bad faith negates its priority interest to Novi as an unpaid seller. Second Avenue bad faith also belies its assertion in pages 19-20 of its brief that Novi could have protected itself by filing a financing statement.

## V. SECOND AVENUE'S OTHER ARGUMENTS ARE IRRELEVANT

Second Avenue's other arguments are unavailing. Its heavy reliance on *National Cash Register Co. v. Firestone & Co.*, 346 Mass. 255 (1963) and other cases cited in its brief for the contention that a secured lender holds a superior interest to an unpaid seller is misplaced and ignores the particular and unique factual circumstances presented by this matter. There was no allegation in *National Cash Register Co.* that the contract between the seller and buyer was akin to a consignment and that the secured party had actual knowledge of the consignment. There were also no allegations that the secured creditor's interest was unenforceable because the buyer had "no rights to the collateral." Unlike here, there were no allegations that the secured creditor acted in bad faith, negating its priority under the UCC or that the parties' agreement was not governed by the UCC at all, as is the case here.

## CONCLUSION

Based on the foregoing, Second Avenue's premature, pre-discovery motion for summary judgment should not be allowed. There are significant factual disputes regarding almost all of the material matters at issue in this action. The parties should be given an opportunity to conduct discovery on these matters and present them to a trier-of-fact for adjudication.

Respectfully submitted,

Dated: Boston, Massachusetts
     September 23, 2022

**MINTZ, LEVIN, COHN, FERRIS,**
**GLOVSKY AND POPEO, P.C.**
*Attorneys for Plaintiff*

By: */s/ Adam Sisitsky*
Adam Sisitsky (BBO # 637532)
Ryan Dougherty (BBO # 703380)
One Financial Center
Boston, Massachusetts 02111
Tel.: (617) 542-6000

Email: alsisitsky@mintz.com
Email: rtdougherty@mintz.com


**TARTER KRINSKY & DROGIN LLP**
Andrew N. Krinsky (BBO # 280160)
Jonathan E. Temchin  (*Pro hac vice*)
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: akrinsky@tarterkrinsky.com
Email: jtemchin@tarterkrinsky.com

## CERTIFICATE OF SERVICE

I, Adam Sisitsky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and electronic copies are also being served via email to all counsel, if not yet registered, on September 23, 2022.

*/s/ Adam Sisitsky*____
Attorney for Plaintiff