UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10952-RGS

NOVI FOOTWEAR INTERNATIONAL CO. LIMITED, Plaintiff

v.

EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC, and
WILLIAM SWEEDLER, Defendants, and

SECOND AVENUE CAPITAL PARTNERS LLC, Intervenor Defendant.

MEMORANDUM AND ORDER ON
SECOND AVENUE CAPITAL PARTNERS'
MOTION FOR SUMMARY JUDGMENT

November 1, 2022

STEARNS, D.J.

What began as a breach of contract dispute over the sale of footwear products has, with the intervention of defendant Earth Opco LLC's (Earth) secured lender, morphed into a tug-of-war between the lender and the seller over whose interest in the products takes priority.   On July 21, 2022, the court entered a preliminary injunction restraining Earth from disposing of the shoes in its possession manufactured by Novi Footwear International Co. Ltd. (Novi) based on Novi's likelihood of showing that Earth had violated its agreement to pay for the footgear.   Second Avenue Capital Partners LLC

(Second Avenue) intervened seeking a declaration that it, as Earth's secured lender, had priority in the products in question.   Second Avenue now moves for summary judgment.   For the following reasons, the court will <u>ALLOW</u> the motion.

## BACKGROUND

Novi is a Hong-Kong based manufacturer and exporter of footwear products to private label owners.   In June of 2020, Novi began sourcing goods for Earth's predecessor in interest pursuant to a Product Exclusivity Agreement.   Novi manufactured and delivered footwear bearing Earth's trademarks.

Over time, Earth and Novi continued to negotiate various aspects of their business relationship.   In a November 1, 2020 letter agreement, the parties agreed that title to the goods would not pass to Earth until Novi received payment in full for the footwear products it delivered.   Earth and Novi further provided that Novi retained the right to "resell the retention of title Goods and all other unshipped Goods at any time to any third party[.]" Nov. 1, 2020 Letter Agreement (Dkt # 90-2) at 13.   Novi initially required Earth to post a standby letter of credit in connection with its orders in the amount of $1.5 million, but that number increased to $5.5 million in

2

November of 2020.

Windsong Global, a private equity firm controlled by William Sweedler, purchased Earth in early 2021. That July, commercial lender Second Avenue issued a line of credit and loans to Earth in exchange for a lien and security interest in Earth's assets. Second Avenue's security interest extended to all of Earth's "personal property and interests in such personal property," including "all Goods, including Equipment, Inventory and Fixtures." Security Agreement (Dkt # 89-2) at 11-12. On July 8, 2021, Second Avenue filed a UCC-1 Financing Statement with the Delaware Department of State covering all of Earth's assets.

Earth and Novi's dealings underwent a sea change in November of 2021, when Earth requested to make partial payments on Novi's outstanding invoices. The parties initially entered a letter agreement that authorized Novi to sell goods bearing Earth's trademarks once Earth fell $3 million behind in its payments. That plan unraveled when, on January 3, 2022, Novi ceased all shipments to Earth and declared that it would not fulfill future orders until the parties settled on a definitive payment plan. Earth's relationship with Second Avenue also began to worsen. On January 24, 2022, Second Avenue notified Earth that it was in default under their July

3

2021 Credit Agreement.

Earth and Novi entered into a February 13, 2022 Letter Agreement which styled itself as a concrete payment plan. The agreement is a poster child for imprecise contract drafting – particularly in its inconsistent descriptions of Novi's interest in the footwear products after their delivery to Earth. It first characterizes Novi's interest as a retention of title, noting that: "The goal of the new transaction structure is that NOVI keeps title for a longer period so that NOVI can be ensured that EARTH stays current to the payment plan as laid out above." Feb. 13, 2022 Letter Agreement (Dkt # 90-2) at 19. The agreement further provides that notwithstanding any shipment: "The ownership [of] the GOODS remains with NOVI until the [bill of lading] and invoice is handed over to EARTH or its forwarder (retention of title) with an agreed upon timing of fourteen days before ETA for February and March [2022], six days for ETA thereafter." *Id.* The February 13, 2022 Letter Agreement also discusses Novi's retention of title in the event of Earth's default:

> In case of bankruptcy of EARTH or any default (e.g., EARTH is defaulting to any payment commitments hereunder) NOVI will not pass any original [bill of lading]/invoice to EARTH but is entitled to nominate any third Party or any logistics provider as its will to clear the GOODS in the port, declare and pay customs for those goods and bring them to any warehouse of NOVI's

4

> choice. In any case EARTH will pay forwarding cost and insurances and hold NOVI harmless and if ask[ed] will transfer all its rights to NOVI without charging any fees or expenses . . . . For clarification: In case EARTH is defaulting to any of its payments or not paying any invoice until the due date, NOVI remains the unrestricted owner of the GOODS and is entitled to transfer title of the GOODS anytime to any person at its wish and is further entitled to sell to any person without any restriction or limitations anytime.

*Id.*

Further on in the agreement, however, the parties describe Novi's interest in the footwear products in terms other than a retention of title. The agreement stipulates that should Earth enter bankruptcy or default on its obligations, Novi would retain the right to sell and transfer title to any previously delivered footwear products with the right to use Earth's trademarks under a license at no cost.   It concluded:

> In case of any default by Earth to any of the payment plans of this agreement, NOVI at any time has the right to buy back all or parts of the remaining goods still in the ownership of Earth . . . from Earth at 100% of their respective FOB value, offsetting against the remaining open payables from Earth to NOVI.

*Id.*

Earth did not pay Novi the amounts owed pursuant to the February 13, 2022 Letter Agreement and began selling off its inventory at discounted prices.   In June of 2022, Novi filed a Complaint and sought a preliminary injunction to restrain Earth from liquidating the footwear products.   The

court granted Novi's motion on July 21, 2022.   Less than a week later, Second Avenue moved to intervene and asked that the court dissolve the preliminary injunction based on its claim to a senior interest in the goods. The court reserved ruling on the motion pending more fulsome briefing on the merits of Second Avenue's declaratory judgment claim.   Second Avenue and Novi have since ably briefed their positions.   The question before the court is whether Second Avenue has a security interest in the Novi-manufactured products in Earth's possession that supersedes Novi's interest.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed R. Civ. P. 56(a).   A fact is material if it "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."   *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).   "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's

position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id.* While pre-discovery motions for summary judgment are disfavored, they may be appropriate for pure questions of law. *See Lee v. Conagra Brands, Inc.*, 2021 WL 3131536, at *1 (D. Mass. July 23, 2021).

Here, the material facts are not in genuine dispute. Novi and Second Avenue agree that: (1) Earth agreed to purchase footwear products from Novi beginning in 2020; (2) Earth and Novi's agreements provided that Novi retained an interest in the footwear products after delivery and before payment (although the nature of that interest has never been made clear); (3) Second Avenue has a security interest in Earth's assets which it recorded with the Delaware Secretary of State; and (4) Novi has not recorded any security interest in the goods that it delivered to Earth.

The Uniform Commercial Code (UCC) governs secured transactions in Massachusetts. Under the UCC, a perfected security interest takes priority over an unperfected security interest. *See* Mass. Gen. Laws. ch. 106 § 9-322(a)(2). The purpose of the UCC's priority rules is to "prevent the creation of secret liens and ensure that bona fide purchasers as well as

creditors [are] given fair notice of [an] encumbrance." *In re Montreal, Me. & Atl. Ry., Ltd.*, 799 F.3d 1, 10 (1st Cir. 2015).

The court previously found that Novi possessed something akin to a quasi-security interest in the footwear products. *See* Order (Dkt # 40) at 7. That understanding accords with the UCC, which provides that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Mass. Gen. Laws ch. 106 § 2-401(1). Thus, to the extent Novi's agreements with Earth reserved title to Novi in goods it delivered to Earth, that reservation amounts to a security interest which Novi failed to perfect. It is undisputed that Second Avenue, on the other hand, perfected its security interest in the same goods. Under a straightforward application of the UCC's priority rules, Second Avenue has a superior interest to Novi in the contested footwear.

Second Avenue's interest in the goods supersedes Novi's even though Earth never paid Novi for the goods in question. Second Avenue points to controlling precedent holding that a perfected secured lender's interest takes priority over the claims of an unpaid seller. *See Tr. Co. Bank v. Gloucester Corp.*, 419 Mass. 48, 50-51 (1994); *Nat'l Cash Register Co. v. Firestone &*

8

*Co.*, 346 Mass. 255, 258 (1963).   Here, Earth's failure to pay for the goods Novi delivered, while causing harm to Novi, does not overcome Second Avenue's perfected security interest.

Novi's three principal arguments against Second Avenue's summary judgment motion each fail to create the possibility that it could establish a superior priority interest in the goods.[1]   First, Novi argues that there is an issue of fact regarding whether Novi and Earth were in a quasi-consignment relationship and if so, whether Second Avenue's alleged knowledge of that relationship operated as an equitable subordination of its interest in the goods.   *See* Opp'n (Dkt # 95) at 10 ("[A] trier-of-fact may conclude that the February 13, 2022 Letter Agreement is a consignment.").   It is not possible, however, that Second Avenue knew or should have known of a consignment agreement between Earth and Novi.   Second Avenue recorded its security interest on July 8, 2021 – fully half a year before Earth and Novi entered the February 13, 2022 Letter Agreement.   Further, Novi identifies no Massachusetts authority recognizing an actual knowledge exception to the

---

[1] The court's finding that Second Avenue is entitled to declaratory judgment necessitates the dissolution of the preliminary injunction. Second Avenue has demonstrated success on the merits of its declaratory judgment action.   It has also shown that it would be irreparably harmed by the maintenance of the injunction, as its collateral is diminishing in value.

UCC's priority rules in the context of consignment; such authority as exists points in the opposite direction.   *See In re State St. Auto Sales, Inc.*, 81 B.R. 215, 220 (Bankr. D. Mass. 1988).

Second, Novi argues that Second Avenue's security interest is not enforceable because Novi's retention of title in the goods deprived Earth of the power to grant a security interest to a third party.   That argument fails under the UCC and Supreme Judicial Court precedent establishing that a debtor must have "rights in the collateral" for a lender to acquire an enforceable security interest.   Mass. Gen. Laws ch. 106 § 9-203(b)(2). Such rights accrue whenever the debtor "gains possession of collateral pursuant to an agreement endowing him with *any* interest other than naked possession."   *Tr. Co. Bank*, 419 Mass. at 51; *see also In re Jojo's Rest., LLC*, 455 B.R. 321, 326 (Bankr. D. Mass. 2011) (acquisition of assets by bill of sale conferred "rights in the collateral" on debtor for purposes of Section 9-203(b)).   It is undisputed that Earth's possession of the contested footwear came with additional rights, including the right to sell the footwear.   *See* Pls.' Resp. to Second Avenue's Statement of Material Facts (Dkt # 98) ¶ 18 (Pls.' SMF).   Second Avenue thus validly obtained an enforceable security interest in the footwear products.

Third, Novi contends that Second Avenue's bad faith undermines its priority interest.   Under the UCC,

> [w]here the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply.

Mass. Gen. Laws. ch. 106 § 2-702(2).   The right to reclaim "is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article."   *Id.* § 2-702(3).

Novi asserts that Second Avenue's claim to a priority interest in the goods is invalid because Second Avenue acted in bad faith.   Second Avenue's alleged bad faith, however, would be relevant only if Novi sought to reclaim the footwear products.   Novi has never pursued reclamation in this case and has presented no evidence of a demand to reclaim the goods from Earth within the required ten-day period or that Earth misrepresented its solvency in writing within the longer three-month period.   At most, Novi exercised its right to repurchase the footgear on July 29, 2022, *see* Pls.' SMF ¶ 35, then stipulated to a modified preliminary injunction that would allow Earth to retain and sell the Novi-supplied goods, *see* Stipulated Modified Prelim. Inj. (Dkt # 91) at 2.   Under the circumstances, Second Avenue's

11

good faith (or lack thereof) is irrelevant.

## ORDER

For the foregoing reasons, Second Avenue's Motion for Summary Judgment (Dkt # 86) is <u>ALLOWED</u>.   The court hereby declares and adjudges that Second Avenue's interest in the contested footwear products takes priority over Novi's.   Second Avenue's Motion for Preliminary Injunction (Dkt #44) is <u>ALLOWED</u>.   The preliminary injunction (Dkt # 40), as modified (Dkt # 92), is dissolved.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE