# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOVI FOOTWEAR INTERNATIONAL CO. LIMITED,<br><br>     Plaintiff,<br><br>v.<br><br>EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC, AND WILLIAM SWEEDLER,<br><br>     Defendants,<br><br>SECOND AVENUE CAPITAL PARTNERS LLC,<br><br>     Intervenor Defendant. | Civil Action No. 1:22-cv-10952-RGS |

## AMENDED COMPLAINT IN COUNTERCLAIM OF
## INTERVENOR-DEFENDANT SECOND AVENUE CAPITAL PARTNERS LLC

Intervenor-Defendant Second Avenue Capital Partners LLC ("Second Avenue") alleges the following in support of its amended counterclaim against Plaintiff Novi Footwear International Co. Limited ("Novi"):

## INTRODUCTION

1.     The asset-based loan industry exists to provide secured financing to entities that would otherwise be unable to obtain unsecured financing. The secured financing that these entities receive provide collateral to the lender in the event that the debtor defaults on its loan. Article 9 of the Uniform Commercial Code ("UCC"), which governs so-called "secured transactions," exists to create a set of uniform rules to manage such relationships. Under Article 9 of the UCC, Second Avenue is the senior secured lender of Earth OpCo LLC ("Earth"), and has the highest priority

interest in Earth's assets. In contrast to Second Avenue's position—which is secured by Earth's assets—Novi's alleged interest in Earth's assets is entirely unsecured.

2.    Second Avenue holds a perfected, first-priority security interest in all of Earth's assets, goods, and inventory. Second Avenue received that first-priority security interest in consideration for substantial loans that it made to Earth. Before agreeing to make those loans, Second Avenue searched public records to confirm that no other party could claim a prior security interest in Earth's assets, goods, or inventory. Second Avenue's search did not identify any such prior security interest, and Second Avenue relied on the absence of any such interest when it decided to make the relevant loans. Second Avenue only agreed to advance the loans in exchange for a first-priority security interest in all of Earth's assets, including its footwear.

3.    Second Avenue perfected its interest by filing a UCC-1 Financing Statement on July 8, 2021. Second Avenue's interest has been a matter of public record since the date of its filing, and Novi has known that Earth's assets are the secured collateral of Earth's lenders since at least February 13, 2022.

4.    Novi has never alleged that it holds a perfected security interest in Earth's goods and inventory. Novi has never alleged that it recorded whatever interest it claims to hold. As of this filing, Second Avenue has not located any recording by Novi that asserts an interest in any of Earth's goods. Further, given its knowledge of Earth's business, Second Avenue expects that any payment Earth made to Novi for the goods at issue was funded in whole, or in substantial part, by the proceeds of the loans that Second Avenue made to Earth.

5.    Notwithstanding its knowledge that Earth's assets were the secured collateral of Earth's lenders, and without notice to Second Avenue (whose interest was a matter of public record), Novi initiated this action against Earth on June 17, 2022. Novi asserted, among other things, that it

2

had the right to dispose of the goods it had previously shipped to Earth by both (i) re-routing and reselling goods in transit, and (ii) buying back and reselling goods already in Earth's possession, by offsetting the purchase price against Earth's alleged debts to Novi.

6.    To preserve its ability to achieve those goals, Novi sought and obtained a preliminary injunction prohibiting Earth from disposing of any goods manufactured by Novi.

7.    Second Avenue received notice of this action and Novi's preliminary injunction on Friday, July 22, 2022.

8.    As this Court held in its November 1, 2022 order granting summary judgment to Second Avenue, Second Avenue's interest in Earth's goods is superior to Novi's interest.  *See* Dkt. No. 104 at 12 ("The court hereby declares and adjudges that Second Avenue's interest in the contested footwear products takes priority over Novi's.").  It is Second Avenue, not Novi, who has the right to direct the disposition of Earth's assets.  And it is Second Avenue, not Novi, who has a higher-priority claim to Earth's collateral and/or proceeds of Earth's sales of any of its goods, including the goods that were the subject of Novi's preliminary injunction.

9.    The preliminary injunction that Novi obtained—without notice to Second Avenue—was inconsistent with Second Avenue's superior interest and harmed Second Avenue.

10.    Novi also acted inconsistently with Second Avenue's superior interest (and harmed Second Avenue) by pressing Earth to transfer to Novi monies and goods *after* Novi knew of Second Avenue's superior interest.

11.    Second Avenue anticipated that Earth would repay its loans using the proceeds of Earth's sales of goods manufactured by Novi.  As is customary in the asset-based lending industry, Second Avenue made loans to Earth based on a borrowing base that prescribes net orderly liquidation value of the inventory.  Second Avenue understood that Earth was winding down its inventory of

shoes, and is relying on its collateral as a source of repayment in conjunction with its security interest. Because of Novi's injunction and Novi's pressure on Earth to pay its debts to Novi before paying its debts to Second Avenue, however, Earth was prohibited from selling the relevant goods to satisfy its debt to Second Avenue and may be ultimately unable to pay all of its debts to Second Avenue. Earth still owes Second Avenue a principal balance of $10,979,133.01 as of January 4, 2023, plus accrued interest, fees and other amounts due under the loan documents.

12.    The goods in question are seasonal footwear, and their value will likely diminish over time. Although Second Avenue has the right to foreclose on the goods, it is not presently aware of another seller (besides Earth) who is well-positioned to sell the goods. Novi's injunction therefore inflicted a harm upon Second Avenue for which Second Avenue had no adequate remedy at law: since Earth could not sell its goods in the immediate future, then Earth's ability to repay Second Avenue's loan was jeopardized. In short, Novi's preliminary injunction (i) reduced the value of Second Avenue's secured collateral and (ii) improperly privileged the interests of a subordinate, unsecured creditor (Novi) at the expense of Earth's first-priority, secured creditor (Second Avenue). This dynamic not only injured Second Avenue as senior creditor—it also hurt Novi and Earth's other junior creditors. To the extent the value of Earth's goods declines, so too could Earth's ability to pay off its loan to Second Avenue. Until Earth repays Second Avenue's loan, interest will continue to accrue, which may in turn reduce the sums available to repay Novi and other junior creditors.

13.    Similarly, Second Avenue has been harmed by Novi's successful pressure campaign (as manifested in the February 13, 2022 agreement and other agreements) to jump the queue and receive payments and goods from Earth *after* Novi knew of Second Avenue's perfected, first-priority security interest.

14.     Second Avenue therefore brought this declaratory judgment action against Novi. Second Avenue sought a declaration that its interest in the relevant goods is superior to Novi's. Second Avenue also sought a modification of the preliminary injunction that Novi obtained, so that Earth can sell the goods manufactured by Novi and use the proceeds to pay its creditors in order of priority.

15.     On November 1, 2022, the Court granted Second Avenue's motion for summary judgment seeking: (a) a declaration that Second Avenue's interest in the goods was superior to Novi's, and (b) modification of the preliminary injunction obtained by Novi. *Id*. at 12 ("The court hereby declares and adjudges that Second Avenue's interest in the contested footwear products takes priority over Novi's. . . . The preliminary injunction . . . is dissolved.").

16.     Second Avenue therefore continues to bring its conversion and unjust enrichment claims, and adds a tortious interference claim, to seek an accounting of the damages Novi has inflicted on Second Avenue, and to seek recompense for those damages.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Second Avenue's claims against Novi under 28 U.S.C. § 1332(a)(2). Second Avenue's members are all citizens of a state, and none is a citizen of a foreign state. Novi is a citizen of a foreign state. The amount in controversy exceeds $75,000.

18.     This Court also has jurisdiction over Second Avenue's claims against Novi under 28 U.S.C. § 1367.

19.     Venue is proper in this district because a substantial part of the events giving rise to the claim occurred here.

## STATEMENT OF FACTS

**A.    Second Avenue's Perfected, First-Priority Security Interest in Earth's Goods.**

20.    Second Avenue specializes in asset-based loans for borrowers in the retail and consumer products industry.

21.    On July 8, 2021, Second Avenue and Earth executed two agreements (collectively, the "Agreements"): a credit agreement (the "Credit Agreement") and a security agreement (the "Security Agreement").

22.    Under the Credit Agreement, Second Avenue extended a multi-million dollar line of credit to Earth.

23.    Under the Security Agreement, Second Avenue's loan was secured with a first-priority security interest in, among other things, all of Earth's assets, goods, equipment, and inventory, "whether now existing or hereafter arising."

24.    Second Avenue perfected its first-priority security interest on the same day it executed the Credit and Security Agreements.  It did so by filing a UCC-1 Financing Statement with Delaware's Department of State.  The UCC-1 Financing Statement disclosed that the collateral for Second Avenue's loan to Earth included "[a]ll assets of the debtor, wherever located, whether now owned or hereafter acquired or arising, and all products and proceeds of the foregoing."

25.    Per the terms of the Agreements, and as disclosed by the UCC-1 Financing Statement, the collateral for Second Avenue's loan included all of Earth's assets, including goods that had been manufactured by Novi.

26.    If Earth defaulted under either of the Agreements, then the Agreements and the UCC gave Second Avenue certain rights and remedies, including the right to foreclose on all of Earth's assets and to direct the disposition of those assets.

27.    Similarly, if Earth defaulted, then the Agreements and the UCC gave Second Avenue a first priority right to collect the proceeds of any of Earth's sales until Earth fully satisfied its debt to Second Avenue.

28.    Earth has committed multiple defaults under the Agreements.  Earth defaulted for the first time in January 2022.  It has defaulted in multiple ways more recently.  For example, and without limitation, it is an Event of Default under the Agreements if Earth is enjoined from conducting any material part of its business.  Most of Earth's sales are to retailers, many of whom signed purchase orders with Earth that specify cancel dates if Earth does not deliver ordered goods within a certain amount of time.  If Earth is not permitted to sell the goods, and misses the cancel dates, then those customers will likely cancel their orders.  As such, selling shoes produced by Novi is a material part of Earth's business, and Earth was enjoined from doing so.

29.    Earth's defaults have triggered Second Avenue's rights to exercise its remedies as a first-priority secured party (with a perfected interest) under the Agreements and the UCC.

**B.    Novi's Alleged Interest in Earth's Goods.**

30.    Novi has never asserted that it holds a perfected security interest in Earth's goods.

31.    Novi has never asserted that it recorded whatever interest it purports to hold in Earth's goods.

32.    Second Avenue is not aware of any recording reflecting Novi's alleged interest in Earth's goods.

33.    Second Avenue's perfected, first-priority security interest in Earth's goods is superior to any interest allegedly held by Novi.

34.    Novi has known about Second Avenue's superior interest since at least February 13, 2022.  When negotiating with Earth concerning the February 13, 2022 agreement, Novi was

concerned that it would need Earth's lenders to approve of the arrangements set forth in that agreement. Novi has claimed that Kevin Haney and William Sweedler of Windsong confirmed that Earth's other lenders (which would necessarily include Second Avenue) were informed about the arrangement under the February 13, 2022 agreement. As such, and upon information and belief, Novi knew at least by February 13, 2022 of Second Avenue's interest as a lender to Earth.

35.     Novi also heard about Second Avenue's superior interest on June 7, 2022. On that date, Earth's counsel informed Novi's counsel that Novi should "be aware from filings made in the US[] that all Earth inventory located at the Mississippi warehouse . . . is the secured collateral of Earth's lenders and cannot be 'repossessed' by Novi or any other party." By that date, Second Avenue's perfected interest had been a matter of public record for roughly 11 months.

36.     Novi has repeatedly demanded that Earth send its inventory to Novi, even though Second Avenue has a perfected, first-priority security interest in that inventory.

37.     Novi has also received payments from Earth even though Novi knew that Second Avenue has a perfected, first-priority security interest in Earth's inventory and the proceeds of any sales of that inventory.

**C.     Novi Commences this Action Without Notice to Second Avenue, and Obtains a Preliminary Injunction that was Inconsistent with Second Avenue's Superior Interest in Earth's Goods.**

38.     Novi commenced this action against Earth on June 17, 2022.

39.     Novi asserted, among other things, that it had the right to dispose of the goods it had previously shipped to Earth by both (i) re-routing and reselling goods in transit, and (ii) buying back and reselling goods already in Earth's possession, by offsetting the purchase price against Earth's alleged debts to Novi.

40.     Those asserted rights cannot be reconciled with Second Avenue's superior interest in Earth's goods.  As a higher-priority creditor with a perfected security interest, it is Second Avenue, and not Novi, who has the rights to foreclose on Earth's goods and collect the proceeds of any of Earth's sales.

41.     Novi's filings did not (i) alert the Court to Second Avenue's superior interest, (ii) develop any argument that Novi's rights were superior to Second Avenue's, or (iii) assert that Novi had taken any steps to perfect a cognizable security interest as required by the UCC or the common law.

42.     Novi sought and obtained a preliminary injunction that restrained Earth from disposing of goods manufactured by Novi.

43.     Novi never provided notice of this action or the preliminary injunction to Second Avenue.  Instead, Second Avenue received notice of this action and the preliminary injunction from Earth on Friday, July 22, 2022—the day after the injunction was entered.

**D.     Second Avenue Suffered a Harm for which it had no Adequate Remedy at Law.**

44.     Because Second Avenue's security interest is superior to any interest allegedly held by Novi, Novi has no right to restrain Earth from discharging its obligations to Second Avenue.

45.     Second Avenue expected that Earth would use the proceeds of its sales of goods manufactured by Novi to repay Second Avenue's loan.  If Earth is not able to sell the relevant goods, then its ability to repay Second Avenue will be diminished.

46.     Second Avenue had no adequate remedy other than seeking an emergency modification of the injunction this Court entered on July 21, 2022.  Although Second Avenue has the right to foreclose on all of Earth's goods, Second Avenue is not presently aware of an alternative merchant who is well-positioned to sell the goods.

47.     The goods are seasonal footwear.  Their value is likely depreciating.  Novi has affirmatively pled that "the spring/summer season is dwindling," and acknowledged that, with each passing day, the value of Earth's goods will likely depreciate.

48.     Novi's injunction therefore threatened to diminish the value of the collateral that secures Second Avenue's loan.  Unless the injunction was swiftly modified to permit Earth to sell the goods to satisfy its debts, Earth's ability to repay its creditors, including Second Avenue, would have been impaired.

49.     Because Novi's alleged interest is inferior to Second Avenue's, it should not be permitted to encumber the collateral that secures Second Avenue's perfected interest, particularly where doing so threatens to reduce the value of the collateral.

50.     Recognizing these points, this Court dissolved the preliminary injunction on November 1, 2022.  Dkt. No. 104 at 12.

## <u>COUNT I – DECLARATORY JUDGMENT</u>

51.     Second Avenue incorporates all of the allegations in the preceding paragraphs.

52.     There was a controversy between Second Avenue and Novi with respect to the security interests in and disposition of Earth's goods.

53.     Second Avenue is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that Second Avenue's interest in Earth's goods, including the goods manufactured by Novi, is superior to any interest held by Novi.

54.     On November 1, 2022, the Court granted Second Avenue's request for a declaration and "declare[d] and adjudge[d] that Second Avenue's interest in the contested footwear products takes priority over Novi's."  Dkt. No. 104 at 12.

55.     Second Avenue therefore requests that the Court enter a final judgment on Count I at the appropriate time.

## COUNT II – INJUNCTIVE RELIEF

56.     Second Avenue incorporates all of the allegations in the preceding paragraphs.

57.     Second Avenue is entitled to an order modifying the preliminary injunction that this Court previously entered on July 21, 2022, so that Earth is permitted to sell goods manufactured by Novi and use the proceeds of such sales for the sole purpose of repaying its creditors in order of priority.

58.     On November 1, 2022, the Court granted Second Avenue's request and ordered that "[t]he preliminary injunction (Dkt # 40), as modified (Dkt # 92), is dissolved." Dkt. No. 104 at 12.

59.     Second Avenue therefore requests that the Court enter a final judgment on Count II at the appropriate time.

## COUNT III – UNJUST ENRICHMENT

60.     Second Avenue incorporates all of the allegations in the preceding paragraphs.

61.     Second Avenue loaned money to Earth that Earth used to purchase footwear.

62.     Second Avenue advanced these loans in reliance on its first-priority security interest in all of Earth's assets, including its footwear.

63.     Notwithstanding Second Avenue's first priority security interest (as recognized by this Court on November 1, 2022, Dkt. No. 104), Novi has unjustly encumbered and pursued possession of Second Avenue's collateral.

64.     As a result, Novi has been unjustly enriched to Second Avenue's detriment.

65.     Novi must account to Second Avenue for all the value of the unjustly encumbered goods and monies by which Novi was unjustly enriched.

## COUNT IV – CONVERSION

66.    Second Avenue incorporates all of the allegations in the preceding paragraphs.

67.    Second Avenue has a first-priority security interest in all of Earth's goods and inventory (as recognized by this Court on November 1, 2022, Dkt. No. 104).

68.    Novi has sought control over Earth's goods in which Second Avenue has a superior interest.

69.    As a result, Novi has engaged in wrongful acts of control or dominion over property to which Novi has no right of possession.

70.    Novi must therefore account to Second Avenue for the value of all the unlawfully converted goods and monies.

## COUNT V – TORTIOUS INTERFERENCE

71.    Second Avenue incorporates all of the allegations in the preceding paragraphs.

72.    On July 8, 2021, Second Avenue and Earth executed the Credit Agreement and the Security Agreement.

73.    Under the Credit Agreement, Second Avenue extended a multi-million dollar line of credit to Earth.

74.    Under the Security Agreement, Second Avenue's loan was secured with a first-priority security interest in, among other things, all of Earth's assets, goods, equipment, and inventory, "whether now existing or hereafter arising."

75.    Second Avenue perfected its first-priority security interest on the same day it executed the Credit and Security Agreements.  It did so by filing a UCC-1 Financing Statement with Delaware's Department of State.  The UCC-1 Financing Statement disclosed that the collateral for Second Avenue's loan to Earth included "[a]ll assets of the debtor, wherever located, whether now

owned or hereafter acquired or arising, and all products and proceeds of the foregoing." The UCC-1 Financing Statement was publicly available.

76.     Per the terms of the Agreements, and as disclosed by the UCC-1 Financing Statement, the collateral for Second Avenue's loan included all of Earth's assets, including goods that had been manufactured by Novi.

77.     Upon information and belief, Novi knew of Second Avenue's perfected, first priority security interest by the time of the negotiations leading up to the February 13, 2022 agreement between Novi and Earth.

78.     Even though Novi was aware of Second Avenue's interest, the February 13, 2022 agreement nonetheless stated that Novi would have the right to payment for certain goods and upon default to exercise an option to repossess those goods.

79.     In other words, Novi knowingly induced Earth to break its contract with Second Avenue by pressing Earth to agree that Earth would first pay its debts to Novi before paying its debts to Second Avenue.

80.     Upon information and belief, Novi's motive was to improperly jump the queue and get paid by Earth before Earth paid its senior creditor, Second Avenue.

81.     Second Avenue has been harmed by Novi's tortious interference because goods/monies that Earth paid to Novi are goods/monies that are now not available to pay down Earth's debt to Second Avenue.

82.     Insofar as Earth is unable to pay all of its debts to Second Avenue, Novi must therefore make Second Avenue whole for any amounts Earth is now unable to pay to Second Avenue.

83.     Novi must also therefore account to Second Avenue for the value of all the goods and monies it induced Earth to transfer to Novi from the time after Novi knew of Second Avenue's perfected, first-priority security interest.

## PRAYER FOR RELIEF

Second Avenue requests judgment against Novi as follows:

84.     An entry of final judgment at the appropriate time against Novi on Counts I and II.

85.     An order restraining Novi from taking any future steps that are inconsistent with Second Avenue's superior interest in Earth's assets.

86.     An accounting of all the monies paid by Earth to Novi in violation of Second Avenue's status as Earth's first-priority, perfected creditor.

87.     An award of damages (in excess of $75,000) and interest.

Respectfully submitted,

SECOND AVENUE CAPITAL PARTNERS
LLC

By its attorneys,

*/s/ Jean-Paul Jaillet*
Jean-Paul Jaillet (BBO#: 647299)
Samuel N. Rudman (BBO#: 698018)
John C. Calhoun (BBO#: 694479)
Preston F. Bruno (BBO#: 699335)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
jjaillet@choate.com
srudman@choate.com
jcalhoun@choate.com
pbruno@choate.com

Dated:  January 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on January 6, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

_/s/ Jean-Paul Jaillet_
Jean-Paul Jaillet (BBO#: 647299)

11178477