# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOVI FOOTWEAR INTERNATIONAL CO. LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>EARTH OPCO LLC, WINDSONG CAPITAL MANAGEMENT LLC, WILLIAM SWEEDLER and WINDSONG GLOBAL LLC,<br><br>Defendants. | Civil Action No.: 1:22-cv-10952-RGS<br><br>**<u>FIRST AMENDED COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Novi Footwear International Co. Limited ("Novi"), by and through its attorneys, Tarter Krinsky & Drogin LLP, as and for its First Amended Complaint against Defendants Earth OpCo LLC ("Earth"), Windsong Capital Management LLC ("Windsong Capital"), William Sweedler ("Sweedler") and Windsong Global LLC ("Windsong Global" and "Windsong Capital" collectively hereinafter referred to as "Windsong Companies"; the "Windsong Companies" and "Sweedler" collectively hereinafter referred to as the "Sweedler Defendants"; and the "Sweedler Defendants" and "Earth" collectively hereinafter referred to as, "Defendants"), alleges and states as follows:

## <u>NATURE OF THE ACTION</u>

1. Defendants have engaged in an illegal scheme to fraudulently induce Novi into shipping millions of dollars' worth of footwear products to Earth without any intention of paying for them. As set forth in greater detail below, Windsong Global acquired Earth in mid-2021 and since that time Sweedler Defendants have intentionally raided Earth's assets in the form of fictitious "management fees" paid to Windsong Capital, rendering Earth a mere shell with no

separate corporate existence and unable to satisfy its significant debt to Novi which totals, at a minimum, $21,256,982.41.

2.      At the same time as they were looting Earth, Sweedler Defendants: (i) represented to Novi that Earth would have sufficient funds to pay for Novi's footwear products because Earth was backed by the full financial weight and resources of Windsong Global, when in truth and in fact Sweedler Defendants knew Windsong Global would never properly capitalize Earth or cause Earth pay the debt owed to Novi; and (ii) expressly agreed, or led Novi to believe that Earth would agree that title to the footwear products would remain with Novi at all times until sold to a third-party and that this arrangement was approved by Earth's lender, when in truth and in fact Sweedler Defendants knew that Earth's lender did not, or would not, approve of this arrangement.

3.      Sweedler Defendants made these false promises, representations and statements by design in order to induce Novi into continuing its shipments of footwear products to Earth, so that the goods could be sold quickly, often at substantial discounts from standard retail prices, and so that Sweedler Defendants could abscond with the sales proceeds without ever remitting payment to Novi.  Novi relied on these false promises, representations and statements and agreed to, and in fact did, ship millions of pairs of footwear products to Earth with an expectation of payment that has never materialized.

4.      When it became apparent that Earth would not honor its payment commitments in March 2022 and April 2022, Novi exercised its rights to repossess and sell the goods that it shipped to Earth, which were agreed to, based on, among other things, Defendants representations that ultimately proved to be false.  Sweedler Defendants, however, refused to allow Earth to return the goods to Novi and, instead, persisted in their scheme to actively sell the

footwear products, pocket the proceeds and deprive Novi of both the footwear products themselves, the only assets available to secure Earth's debt, and the sales proceeds.

## PARTIES

5.    At all times relevant herein, Novi was and is a corporation duly organized and existing under the laws of Hong Kong, with its principal place of business located in Hong Kong.

6.    Upon information and belief, Defendant Earth OpCo LLC was and is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located at 41 Seyon Street, Suite 400, Waltham, Massachusetts 02453.

7.    Upon information and belief, WH Earth Investments LLC is the member of Defendant Earth OpCo LLC; WH Earth Investments LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located in the State of Connecticut.

8.    Upon information and belief, Windsong Earth Investment Holdings LLC is the member of WH Earth Investments LLC; Windsong Earth Investment Holdings LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located in the State of Connecticut.

9.    Upon information and belief, Defendant Windsong Global LLC and Hilco, Inc. are the members of Windsong Earth Investment Holdings LLC; Windsong Global is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located in the State of Connecticut and Hilco, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business located in the State of Connecticut.

10.     Upon information and belief, the members of Defendant Windsong Global LLC are Defendant William Sweedler, a citizen of the State of Connecticut; Brian Cooper, a citizen of the State of Connecticut; Andy Tarshis, a citizen of the State of Connecticut; and Kelly Mansdorf, a citizen of the State of Connecticut.

11.     Upon information and belief, Sweedler not only is a member Windsong Global, he is also its Chairman and Chief Executive Officer; Sweedler also is the Chief Executive Officer and Chairman of Earth.

12.     Upon information and belief, Defendant Windsong Capital Management LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with a principal place of business located in the State of Connecticut.

13.     Upon information and belief, Sweedler, Brian Cooper, Andy Tarshis and Kelly Mansdorf, all citizens of the State of Connecticut, are the members of Windsong Capital; Sweedler also is Chief Executive Officer and Chairman of Windsong Capital.

14.     Upon information and belief, Earth and Windsong Capital are parties to a certain Management Services Agreement, pursuant to which Earth pays Windsong Capital a management services fee.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on complete diversity of citizenship between Novi and Defendants and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs; in addition, this Court has jurisdiction over Earth pursuant to G.L. c. 223A, § 3.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things: (i) Earth's principal place of business is located within this judicial district;

and (ii) a substantial part of the events giving rise to Novi's claims occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

17.     Novi is a member of the Wortmann Group of companies, one of the largest shoe production and distribution companies in Europe.  Since its formation in 1986, Novi has been a leading sourcing company and exporter of ladies', men's and children's footwear.  In addition to sourcing for the brands belonging to the Wortmann Group, Novi provides sourcing and manufacturing services to many well-known private label customers.

18.     Earth is a shoe manufacturer and wholesaler based in Boston, Massachusetts. Upon information and belief, in or around June 2020, Earth's predecessors in interest, including Earth Inc., closed Earth's sourcing office in Asia and entered into a Product Exclusivity Agreement (the "Product Exclusivity Agreement") with Novi for the purchase of seasonal and specially made footwear products bearing the Earth name and trademarks.

19.     Based on the Product Exclusivity Agreement and Earth's standby letter of credit, Novi began fulfilling Earth's purchase orders and delivered footwear products pursuant to Earth's delivery instructions; Earth accepted footwear products without protest or objection.

20.     In a November 1, 2020 Letter Agreement (the "November 1, 2020 Letter Agreement"), Earth's predecessor in interest agreed that Novi would retain an option to sell the footwear products to secure payment upon Earth's default.

21.     In 2021, Earth was purchased by a private equity firm, Windsong Global, which is owned and/or controlled by Sweedler, its Chairman and Chief Executive Officer, who then became also the Chairman and Chief Executive Officer of Earth.

22.    Following Windsong Global's acquisition of Earth, Earth—controlled by Windsong Global and Sweedler—suddenly took an entirely different approach towards settling its debts. Novi continued to fulfill Earth's purchase orders and delivered the footwear products pursuant to Earth's delivery instructions; Earth accepted the footwear products without protest or objection.

23.    In November 2021, Earth—controlled by Windsong Global and Sweedler—suddenly announced that payments would no longer be made in full and requested a deferral of payments going forward, promising only partial payments towards outstanding invoices as part of their scheme to loot Earth and render it unable to pay its creditors.

24.    Between November 2021 and February 2022, Novi and Defendants, including Sweedler and other employees and partners of Windsong Global, held numerous meetings and exchanged significant email correspondence to discuss a "path forward," such that Novi would continue to ship footwear products to Earth.

25.    Sweedler and other Windsong Global representatives repeatedly advised Novi, verbally and in writing, that Windsong Global was in complete control of Earth's operations; that Windsong Global made all decisions on Earth's behalf; and that Earth employees had no independent managerial authority to act with respect to Novi, except as specifically authorized by Windsong Capital and Sweedler.[1]

26.    According to Windsong Global and Sweedler, Earth was insolvent and had no financial resources to satisfy its debts to Novi, but needed Novi to continue its shipments so that

---

[1]    For example, in a December 20, 2021 email, Brian Cooper, a partner at Windsong Global, advised Novi that he is the leader and point of contact on the "bigger discussions" with Novi and instructed Novi to communicate with another Windsong Global employee or partner, Kevin Haney, "on all these matters" relating to Defendants' non-payment for Novi's goods. Brian Cooper further instructed Novi "to continue to cc Bill [Sweedler] and myself so we are all in the loop." Brian Cooper and Kevin Haney were not, and never have been, Earth's employees.

Earth would have some revenue and maintain the continuity of its operations. Sweedler stated during a meeting on December 23, 2021 and repeated at a meeting on January 11, 2022 that payments would be made "on time" and that Windsong Global "guaranteed 100%" of Earth's payments to Novi because, while Earth had no assets, Windsong Global would fund Earth and its operations, including payments to Novi.

27.    Sweedler also stated during these meetings that a principal of Hilco, Inc., a member of one or more of the Windsong Companies and their affiliates, is a "close friend" and "multi-billionaire" and that Sweedler would give Novi a "blank purchase order from Hilco," which would allow Novi to send an official invoice with "FOB prices to Hilco" in the event of Earth's non-payment.

28.    Unbeknownst to Novi, however, these statements were a ruse and intended to mislead Novi into continuing shipments to Earth when Defendants had no intention of paying for the goods. Rather, Sweedler Defendants were siphoning any and all of Earth's assets so that Earth would remain insolvent and unable to pay Novi, including, without limitation, in the form of paying Windsong Capital exorbitant and inflated "management fees" for fictitious services that were never rendered. Sweedler never intended to, and in fact did not, obtain or even discuss obtaining a blank purchase order from Hilco.

29.    Believing that its discussions with Sweedler Defendants were being undertaken in good faith, Novi consistently expressed that it must retain control and/or ownership over footwear products it shipped to Earth until such time as those products were sold to a third-party, thus ensuring that Novi either would be paid for the footwear products immediately upon sale or would be in a position to re-possess the products if they remained unsold.

30.    One scenario that was discussed with Sweedler Defendants on numerous occasions, including, but without limitation, in emails dated December 11, 2021; December 13, 2021; December 31, 2021; January 4, 2022; and in meetings on December 11, 2021 and December 23, 2021, was a "pack and hold" arrangement, whereby unsold Autumn/Winter 2021 goods would be taken to a warehouse controlled by a trustee, who would not release the products until approval was received from Defendants and Novi.

31.    Sweedler Defendants indicated to Novi that they would agree to a pack and hold arrangement, but this was a pretense to induce Novi to continue its shipments of footwear products under the guise of ongoing and productive business discussions; but in truth and in fact, Sweedler Defendants knew that Earth's lender did not, or would not, approve of any such arrangement where Novi had authority to prevent the release of footwear products from a warehouse, but wrongfully concealed that information from Novi.

32.    Another scenario that was discussed with Sweedler Defendants during this time period was an arrangement whereby Novi would continue to ship goods on the condition that the bills of lading would be issued with consignee "to order," thus ensuring that ownership of the footwear products would remain with Novi until sold to a third party.

33.    Sweedler Defendants expressly agreed to have Earth's forwarder issue the bills of lading with consignee to order at a December 23, 2021 meeting as confirmed in written correspondence.  Consistent with this agreement, in a contemporaneous written agreement, dated December 22, 2021, but signed on December 24, 2021 (the "December 24, 2021 Letter Agreement"), Defendants acknowledged its existing indebtedness to Novi and authorized Novi to sell the products bearing Earth's trademarks after "past due, unsecured unpaid deliverables … exceed" $3 million.

34. Defendants, however, did not instruct their forwarder to issue bills of lading only with the consignee "to order" as agreed during the December 23, 2021 meeting. After Novi discovered that Defendants did not instruct Earth's forwarder to issue bills of lading with the consignee to order, Sweedler Defendants doubled down on their misrepresentations and continued to state that Novi would retain ownership of the products until sold to a third party, including, for example, in a document titled "Path Forward" created by Kevin Haney of Windsong Global and transmitted to Novi on December 31, 2021.

35. In January 2022, Defendants instructed their forwarder to issue bills of lading only with the consignee "to order," but that was short-lived. Defendants later advised Novi that they were changing their freight forwarder to a company called "Daytona" because this company charged less expensive fees. Defendants further stated that "Daytona" would not accept bills of lading with the consignee "to order," but this was a pretext to resume issuing bills of lading to order of Earth. Upon information and belief, "Daytona" is owned, operated and/or controlled by Windsong Global or its affiliates. Defendants knew that their lender did not, or would not, approve of an arrangement where Novi retained title to the footwear products.

36. Defendants continued their discussions and meetings into early January 2022 and through February 2022. During this time, Novi and Defendants exchanged financial data, invoicing information, inventory lists and other information concerning goods shipped by Novi and Sweedler Defendants continued to float the concept of Novi retaining title to its footwear products; goods being packed and held and other proposals that gave the appearance as though Earth was going to pay for the footwear products.

37. Throughout these and their prior discussions, Defendants continued to misrepresent Earth's agreements with its lenders and Earth's access to credit or loan proceeds,

including, without limitation, that Earth's lender would receive only a percentage of revenue generated from sales of Novi's footwear products and there would be a sufficient amount left over to repay Novi.

38.    In a letter agreement dated February 13, 2022 (the "February 13, 2022 Letter Agreement"), negotiated between Sweedler Defendants and Novi, Earth, once again, acknowledged its existing debt to Novi.  Sweedler was one of two signatories to the February 13, 2022 Letter Agreement, signing on behalf of Earth as Chairman.  Earth also agreed that it owed Novi approximately $9.6 million due to Novi for footwear products for the Spring/Summer 2022 season that had been shipped prior to January 10, 2022.  Sweedler Defendants agreed that Earth would pay $8,218,735.50 of the $9.6 million in installments according to the schedule set forth in the February 13, 2022 Letter Agreement with the full amount paid by the end of March 2022. The balance would be paid according to the due date on the invoice.  Sweedler Defendants, however, knew that Earth would never pay for these products when it caused Earth to make these representations to Novi.

39.    Earth also reaffirmed in the February 13, 2022 Letter Agreement that in the event of Earth's default in payment to Novi, "NOVI can sell (and transfer title to) the GOODS and/or the Delivered GOODS using the trademarks of Earth worldwide," granting Novi "a license to sell the GOODS and/or Delivered Goods using all trademarks of EARTH at no cost." Sweedler Defendants, however, knew that Earth would never return the footwear products to Novi.

40.    For footwear products already delivered to Earth for Fall/Winter 2021, in the February 13, 2022 Letter Agreement, Earth acknowledged owing Novi the amount of approximately $10.4 million as of January 14, 2022, which after application of the $5.5 million standby letter of credit was reduced to $4.9 million, and agreed to pay for these footwear

products in full by no later than September 30, 2022. Sweedler Defendants, however, knew that Earth would never pay for these products.

41.     The February 13, 2022 Letter Agreement also contains the following language:

For clarification: In case EARTH is defaulting to any of its payments or not paying any invoice until the due date, NOVI remains the unrestricted owner of the GOODS and is entitled to transfer title of the GOODS anytime to any person at its wish and is further entitled to sell to any person without any restriction or limitations anytime.

42.     Sweedler Defendants agreed to this language in order to induce Novi to resume shipments of footwear products, knowing that Earth's lender did not, or would not, approve of any such arrangement where Novi retained title to the footwear products and/or where Earth would only pay a portion of the proceeds to the lender.

43.     The February 13, 2022 Letter Agreement further states that "EARTH confirms that this agreement is fully in line with any interest of any Earth shareholder and/or conflicting with any agreement with any financing partner/bank/factoring."

44.     Sweedler Defendants agreed to this language in order to induce Novi to resume shipments of footwear products, knowing that their lender did not, or would not, approve of any such arrangement.

45.     Almost as soon as the ink was dry on the February 13, 2022 Letter Agreement, Earth defaulted on their payment obligations. On April 25, 2022, Novi sent a letter to Earth demanding payment of all outstanding invoices in full; as of April 25, 2022, the amount of unpaid invoices was $15,190,497.55, exclusive of interest and other charges. Notwithstanding Novi's April 25, 2022 letter, Defendants have failed and/or refused to pay the outstanding invoices despite accepting the footwear products without protest or objection and otherwise have refused to return the footwear products to Novi.

46.     Throughout this time, Defendants have reaped the financial benefits of its sales of Novi's footwear products without paying the significant debt owed to Novi.  Sweedler Defendants have caused Earth to sell tens of millions of dollars of Novi's footwear products, often at significant below retail price discounts to the consumer to quickly unload the products and obtain the proceeds, and Sweedler Defendants looted those sales proceeds to Novi's exclusion.

47.     Sweedler Defendants have engaged in other misconduct related to Earth.  Upon information and belief, Windsong Global and Sweedler purchased the "Piloti" brand of footwear products in 2021 and the assets received from the acquisition are owned by Windsong Global or its affiliates and not Earth.

48.     Sweedler Defendants have used Earth, its employees and facilities to fulfill sales of Piloti-branded footwear products to consumers, but none of the revenues generated from the sales were ever given to or received by Earth.

49.     Instead, upon information and belief, Sweedler Defendants have pocketed the sales proceeds for themselves, while at the same time accounting for the sales of Piloti-branded shoes on Earth's books and records in excess of $2 million, despite Earth having not received any of the revenue generated from the sales, in part and parcel of Sweedler Defendants' scheme to loot Earth and render it insolvent.

50.     Upon information and belief, Sweedler Defendants falsely represented and reported to its lender that Piloti-branded footwear are owned by Earth and based on that misrepresentation Sweedler Defendants' lender extended credit and loans to Sweedler Defendants.

51.    Upon information and belief, Sweedler Defendants have used the credit or loan proceeds extended to Earth by its lender based on its false reporting of Piloti-branded footwear products to enrich themselves, including, without limitation, payments in excess of $500,000 to Sweedler Defendants.

## VEIL-PIERCING

52.    As set forth in greater detail above, Windsong Global, Windsong Capital and Sweedler exercise pervasive control over Earth and Earth has no officers or board of directors that act independently of Sweedler and Windsong Companies: (i) Novi was repeatedly advised by Sweedler and other Windsong Global representatives, verbally and in writing, that Windsong Global and Sweedler were in complete control of Earth's operations; (ii) that Windsong Global and Sweedler made all decisions on Earth's behalf; (iii) that Earth employees had no independent managerial authority to act with respect to Novi, except as specifically authorized by Windsong Capital and Sweedler; (iv) Sweedler repeatedly stated that Earth had the financial-backing of Windsong Global and would be sufficiently capitalized to answer for its debts to Novi; (v) only Windsong Global employees, partners and representatives were responsible for negotiating with Novi; and (vi) Sweedler Defendants siphoned Earth's funds to render it insolvent, including, without limitation, in the form of excessive and fraudulent management fees to Windsong Capital.    Upon information and belief, no actions consistent with independent corporate existence have been taken at Earth since its acquisition by Windsong Global.

53.    As set forth in greater detail above, Earth, Windsong Global, Windsong Capital and Sweedler have intermingled their business activities, assets and/or management.    Defendants have in fact sold millions of dollars of Novi's footwear products and have used revenue due to Earth to benefit themselves or other entities owned by them.    The intermingling of the sales

proceeds resulted in Earth's insolvency.  Funds received by Earth are paid to Windsong Capital as "management fees" for fictitious services.  Defendants also absconded with Earth's funds with respect to the Piloti-branded shoes.  Moreover, Earth's purchase orders falsely identity Earth as "Earth Inc.," when there is no such active entity consistent with their misuse of Earth's corporate form.

54.    As set forth in greater detail above, Earth was and is undercapitalized and insolvent, a point that Defendants have acknowledged in meetings with Novi's representatives as part and parcel of Defendants' scheme to induce Novi to continue its shipments of footwear products.  In addition to Earth's substantial unpaid debt to Novi, Earth also has failed to pay its lender millions of dollars; upon information and belief, Earth's debt to its lender is $17,160,050.95 as of July 25, 2022, plus accrued interest, fees and other amounts due under its loan documents.

55.    As set forth in greater detail above, Sweedler Defendants have failed to observe corporate formalities.  Earth as a mere shell with no separate corporate existence from Sweedler Defendants.  Sweedler Defendants have repeatedly confirmed that Windsong Global and Sweedler are in complete control of Earth's operations; that Windsong Global and Sweedler made all decisions on Earth's behalf; and that Earth employees had no independent managerial authority to act with respect to Novi, except as specifically authorized by Windsong Capital and Sweedler.

56.    Upon information and belief, and as set forth in greater detail above, Sweedler Defendants have siphoned away Earth's funds; Defendants have looted Earth's assets, including, without limitation, with respect to any proceeds received from the sales of Novi's footwear products, the payment of so-called management fees to Windsong Capital; the sale of the right to

exclusively use Earth Trademarks to the Marc Fisher Footwear group of companies and the misappropriation of the funds received for the Piloti-branded shoes. Sweedler Defendants have acknowledged that Novi is Earth's sole supplier of footwear products and therefore revenue generated from the sales of those footwear products should have been available to pay Novi. Earth's failure and inability to make such payments demonstrates that Sweedler Defendants have looted Earth's funds.

57.    Upon information and belief, Sweedler Defendants have misrepresented Earth's books and records and have hidden its true financial condition from its lender and/or governmental taxing authorities, including, without limitation, with respect to the Piloti-brand of footwear products. Based on the foregoing and the other allegations set forth above, Sweedler Defendants have used and abused Earth to perpetrate a fraud.

### COUNT I
### (Breach of Contract)

58.    Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59.    Novi and Defendants entered into one or more contracts for Novi to sell footwear products to Earth, with agreed upon terms for pricing, nature and volume of the footwear products and methods of shipping and delivery; these contracts were formed verbally, in email correspondence and/or in signed agreements.

60.     The contracts between Novi and Defendants for the sale of the footwear products are valid and enforceable contracts.

61.    Novi complied with its obligations under the contracts by delivering the agreed upon footwear products pursuant to Defendants' delivery instructions.

62.     Defendants accepted delivery of the footwear products without objection or protest.

63.     Novi invoiced Defendants for the footwear products it delivered in accordance with their agreements and business dealings.

64.     Despite Novi's repeated demands for payment, Defendants have failed and/or refused to pay Novi for the footwear products in accordance with the parties' agreements.

65.     Defendants' failure and/or refusal to pay for the footwear products constitutes a breach and/or repudiation of the parties' agreements.

66.     By reason of the foregoing, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

67.     Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68.     As a matter of law, every contract, including the contracts between the parties herein, imposes on the contracting parties the duty of good faith and fair dealing in the performance of the obligations under the contract.

69.     As set forth in greater detail above, Defendants have breached their duty of good faith and fair dealing by, among other things, denying Novi the fruits of its bargain, including by intentionally rendering Earth insolvent and unable to pay its obligations.

70.     By reason of the foregoing, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT III
### (Goods Sold and Delivered)

71.    Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

72.    Defendants specially ordered the footwear products.  The footwear products conformed to Defendants' specifications and were timely shipped by Novi and delivered in accordance with Defendants' delivery instructions.

73.    Defendants accepted delivery of the footwear products without objection or protest.

74.    Despite Novi's repeated demands for payment, Defendants have failed and/or refused to pay Novi for the footwear products.

75.    By reason of the foregoing, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT IV
### (Unjust Enrichment)

76.    Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

77.     In the alternative to its breach of contract claim, Novi is entitled to recover from Defendants under the theory of unjust enrichment.

78.    Novi sold and delivered the footwear products to Defendants with the expectation that Defendants would pay the fair and reasonable value of the footwear products in the amounts set forth in Invoices.

79.     As set forth in greater detail above, Defendants have failed and/or refused to pay for the footwear products despite Novi's due demands for same.

80.     Notwithstanding Defendants' failure and/or refusal to pay for the footwear products, Defendants have retained the Goods for themselves, thereby benefiting from its agreements with Novi.

81.     Accordingly, Defendants have been unjustly enriched by retaining the benefits of the agreements with Novi while at the same time failing and/or refusing to pay for the footwear products as required.

82.     Equity and good conscience require restitution.

83.     By reason of the foregoing, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT V
### (Promissory Estoppel Against the Sweedler Defendants)

84.     Novi repeats and alleges each of the foregoing paragraphs as if fully set forth herein.

85.     As set forth in greater detail above, the Sweedler Defendants knowingly made numerous false statements to Novi between November 2021 and February 2022, including, without limitation, in email correspondence and in meetings on December 23, 2021, December 30, 2021 on January 11, 2022, that: (i) Windsong Global would fund Earth such that payment would be made to Novi in full; (ii) for certain Novi footwear products, they would be packed and held in a warehouse overseen by a trustee and released after approval received from Defendants and Novi; and (iii) for future shipments, title to footwear products would remain with Novi until sold to a third party.

86.    Sweedler and Windsong Global intentionally and knowingly made these false statements to induce Novi to continue its shipments of footwear products under the appearance that the parties were engaging in ongoing and productive business discussions in good faith, when in truth and in fact Sweedler and Windsong Global had no intention of agreeing to these terms or honoring these commitments.

87.    Novi justifiably relied on Sweedler and Windsong Global's false promises, statements and representations and continued to ship footwear products to Earth on the belief that Sweedler and Windsong Global were acting in good faith.

88.    As a direct, substantial and proximate result of Sweedler and Windsong Global's false statements, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

<u>**COUNT VI**</u>
**(Intentional Misrepresentation Against Sweedler Defendants)**

89.    Novi repeats and alleges each of the foregoing paragraphs as if fully set forth herein.

90.    As set forth in greater detail above, Sweedler Defendants knowingly made numerous false statements to Novi between November 2021 and February 2022, including, without limitation, in email correspondence and in meetings on December 23, 2021, December 30, 2021, and January 11, 2022, that: (i) Windsong Global would fund Earth such that payment would be made to Novi in full; (ii) for certain Novi footwear products, they would be packed and held in a warehouse overseen by a trustee and released after approval received from Defendants and Novi; and (iii) for future shipments, title to footwear products would remain with Novi until sold to a third party.

91.     Sweedler Defendants intentionally and knowingly made these false statements to induce Novi to continue its shipments of footwear products under the appearance that the parties were engaging in ongoing and productive business discussions in good faith, when in truth and in fact Sweedler Defendants had no intention of agreeing to these terms or honoring these commitments.

92.     Novi justifiably relied on Sweedler Defendants' false promises, statements and representations and continued to ship footwear products to Earth on the belief that Sweedler Defendants were acting in good faith.

93.     As a direct, substantial and proximate result of Sweedler Defendants' false statements, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT VII
### (Breach of Fiduciary Duty Against Sweedler)

94.     Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95.     As set forth above, after Earth was acquired by Windsong Global, Sweedler Defendants looted Earth's assets so that Earth became insolvent and unable to satisfy its obligations to Novi.

96.     When a corporation becomes insolvent, its officers and directors owe a duty to the corporation's creditors to hold the assets of the corporation in trust for the benefit of the corporation's creditors.

97.     As an officer and director of Earth, an insolvent corporation, Sweedler owed a fiduciary duty to Earth's creditors, including Novi, to hold Earth's assets in trust for the benefit of Earth's creditors, including Novi.

98.     As set forth in greater detail above, Sweedler breached the fiduciary duty he owed to Novi by disposing of Earth's assets, including, without limitation: (i) with respect to any proceeds received from the sales of Novi's footwear products; (ii) using Earth's assets to the pay management fees to Windsong Capital; (iii) causing Earth to pay expenses related to sales of Piloti-branded footwear products despite never receiving the revenues generated from those transactions; and (iv) induced Novi to extend further credit to Earth.

99.     Based on Sweedler's breach of the fiduciary duty owed to Novi, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

**COUNT VIII**
**(Fraud Against Sweedler Defendants)**

100.    Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

101.    As set forth in greater detail above, Sweedler Defendants made numerous false statements to Novi between November 2021 and February 2022, including, without limitation, in email correspondence and in meetings on December 23, 2021, December 30, 2021, and January 11, 2022, that: (i) Windsong Group would fund Earth such that payment would be made to Novi in full; (ii) for certain Novi footwear products, they would be packed and held in a warehouse overseen by a trustee and released after approval received from Defendants and Novi; (iii) for future shipments, title to footwear products would remain with Novi until sold to a third party; and (iv) the arrangements for Novi to continue to ship footwear products to Earth, and would retain title to the footwear products, did not conflict with Earth's agreements with its lenders.

102.    Sweedler Defendants intentionally and knowingly made these false statements to induce Novi to continue its shipments of footwear products under the appearance that the parties

were engaging in ongoing and productive business discussions in good faith, when in truth and in fact Sweedler Defendants had no intention of agreeing to these terms or honoring these commitments.

103.    Novi relied on Sweedler Defendants' false promises, statements and representations and continued to ship footwear products to Earth on the belief that Sweedler Defendants were acting in good faith.

104.    Based on Sweedler Defendants' false statements, Novi has been damaged in an amount to be determined at trial, but in no event less than $21,256,982.41, plus interest, attorneys' fees, disbursements and costs of suit.

## COUNT IX
### (Violation of G.L. c. 93A, §§ 2, 11 Against Sweedler Defendants)

105.    Novi repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

106.    Sweedler Defendants are each "persons" engaged in "trade" and "commerce" in the Commonwealth of Massachusetts as those terms are defined by G.L. c. 93A.

107.    By virtue of the conduct described above, Sweedler Defendants are engaged in unfair methods of competition and unfair or deceptive practices in the conduct of trade, as defined by G.L. c. 93A § 2.

108.    Sweedler Defendants conduct as described above constitutes a willful and knowing violation of G.L. c. 93A § 2.

109.    Sweedler Defendants' unfair and deceptive trade practices have occurred primarily and substantially in the Commonwealth of Massachusetts.

110.    As a result of such conduct by Sweedler Defendants, Novi has suffered a loss of money and property, and continues to suffer losses of money and property, in an amount to be

determined at trial, but in no event less than $21,256,982.41, plus treble damages, punitive damages, interest, attorneys' fees, disbursements and costs of suit.

**WHEREFORE**, Plaintiff Novi Footwear International Co. Limited demands judgment in its favor and against Defendants Earth OpCo LLC, Windsong Capital Management LLC, William Sweedler and Windsong Global, LLC as follows:

A.    On Count I, an amount to be determined at trial, but in no event less than $21,256,982.41;

B.    On Count II, an amount to be determined at trial, but in no event less than $21,256,982.41;

C.    On Count III, an amount to be determined at trial, but in no event less than $21,256,982.41;

D.    On Count IV, an amount to be determined at trial, but in no event less than $21,256,982.41;

E.    On Count V, an amount to be determined at trial, but in no event less than $21,256,982.41;

F.    On Count VI, an amount to be determined at trial, but in no event less than $21,256,982.41;

G.    On Count VII, an amount to be determined at trial, but in no event less than $21,256,982.41;

H.    On Count VIII, an amount to be determined at trial, but in no event less than $21,256,982.41;

I.    On Count IX, an amount to be determined at trial, but in no event less than $21,256,982.41, plus treble damages and punitive damages; and

J.    On All Counts, interest, attorneys' fees, disbursements, costs of suit and such

other and further relief as this Court deems just, equitable and proper.

Respectfully submitted,

Dated: Boston, Massachusetts
February 27, 2023

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.**
*Attorneys for Plaintiff*


By: */s/ Adam Sisitsky*
Adam Sisitsky (BBO # 637532)
Ryan Dougherty (BBO # 703380)
One Financial Center
Boston, Massachusetts 02111
Tel.: (617) 542-6000
Email: alsisitsky@mintz.com
Email: rtdougherty@mintz.com


**TARTER KRINSKY & DROGIN LLP**
Andrew N. Krinsky (BBO # 280160)
Jonathan E. Temchin  (*Pro hac vice*)
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: akrinsky@tarterkrinsky.com
Email: jtemchin@tarterkrinsky.com

## <u>CERTIFICATE OF SERVICE</u>

      I, Adam Sisitsky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 27, 2023. Copies of this filing will also be served on Defendants, to the extent their counsel is not yet registered.

<u>/s/ Adam Sisitsky</u>    
Attorney for Plaintiff
